[Civ. No. 30866.   Second Dist., Div. Five.   Mar. 8, 1968.]

BRIAN FARNON, Plaintiff and Appellant, v. MARIA COLE, as Executrix, etc., Defendant and Respondent.

Volney F. Morin, Robert B. Lisker, Morris T. Johnson and Harlean M. Carroll for Plaintiff and Appellant.

Leo Branton, Jr., for Defendant and Respondent.

AISO, J. pro          The sole question for our determination is whether the death on February 15, 1965, of defendant's testator Nathaniel Cole, more popularly known as "Nat King Cole," excused further performance of a written contract between Cole and the plaintiff Brian Farnon wherein Cole agreed to employ Farnon and Farnon agreed to render services to Cole as a musical director for a period of one year commencing August 31, 1964.

The agreement, as set forth in the margin, was entered into on August 10, 1964.[1] Plaintiff Farnon rendered performance

---

*Assigned by the Chairman of the Judicial Council.

[1] "August 10, 1964

"Mr. Brian Farnon
12221 Hillslope Street
Studio City, California
Dear Mr. Farnon:

"The following shall constitute an entire agreement between us.

"I agree to employ you, and you agree to render services to me as my musical director subject to the following terms and conditions:

"1. The term of this agreement shall be for one year commencing August 31, 1964.

"2. Your services shall be exclusive to me, at such times and places as I may designate, unless I shall advise you that your services shall not be needed during any specific period.

"3. I agree to provide transportation for yourself only, from Los Angeles to any place of engagement, and return, but shall not be responsible for your lodging, meals, or other costs of living away from Los Angeles, nor for your wardrobe costs or the maintenance thereof.

"4. I agree to pay as full compensation for your services in the following manner:

"a. Gross salary of $650.00 per week while you are away from Los Angeles in my employ.

"b. Gross salary of $650.00 per week while you are working in Los Angeles.

"c. Gross salary of $325.00 per week while you are not working.

"The Employer agrees to make contribution for the credit of the Musical Director to the AFM-Employers Pension Welfare Fund, by separate check payable to the AFM-EPW Fund at the end of each week in the sum of $13.65 per week.

"d. It is understood and agreed that the above compensation is for your services as musical director in connection with my personal appearances. Should my services be rendered in connection with either television or the making of phonograph recordings, it is understood and agreed that you will be compensated at not less than union scale for

thereunder through January 31, 1965. Cole became ill in December of 1964, was hospitalized on December 8th, and his illness was diagnosed as being caused by cancer. Cole was disabled from thereafter making any public appearances, but payments were made to Farnon pursuant to paragraphs 4b and 4c of the contract to and through January 31, 1965. On February 1, 1965, Cole underwent surgery and on the same date a letter was sent giving plaintiff notice of termination of the contract. Cole died on February 15, 1965, and defendant Maria Cole became the duly appointed, qualified and acting executrix of Cole's estate. On March 31, 1965, plaintiff filed a claim against the estate upon the theory that the contract did not terminate with Cole's death, that paragraph 4f thereof guaranteed $25,000 for the term of the agreement, and that deducting the $11,900 paid to him through January 31, 1965, there remained due and payable to him the unpaid balance of $13,100. Defendant executrix did not act on the claim within 10 days of its filing; plaintiff elected to treat the claim as rejected and filed this action against defendant on May 25, 1965.

The trial court, sitting without a jury, found in favor of defendant executrix and against plaintiff on February 2, 1966. The court found "that as a result of the illness and resulting death of Nathaniel Cole, on February 15, 1965, the contract . . . was terminated by Act of God; that the obliga-

---

television and not less than twice union scale for phonograph recordings, whether or not you actually render services.

"e. Should your services be required as arranger or copyist, you will be compensated at not less than union scale for your services.

"f. Notwithstanding the amounts set forth in a., b., c., d., and e. above, your minimum gross compensation for the term of this agreement shall be $25,000.00.

"g. It is further understood and agreed that your services are rendered in the capacity of an employee and the amounts set forth in a., b., c., and d. above are gross amounts, and as such are subject to withholding of applicable Federal and California taxes.

"h. It is also understood and agreed that your services may be called upon to be rendered to me individually or to any corporation or company for whom I may render services and that your compensation may be paid by any such other corporation or company and shall constitute payment under this agreement. In arriving at the total amount guaranteed under section f. of this paragraph, the total of any such amounts shall be considered as if paid by me.

"Your signature in the space provided below acknowledges that you have read and understood this agreement in its entirety and that you have accepted the terms as fully set forth above.

"Very truly yours,

"Nat King Cole

"Accepted and Agreed to:

"Brian Farnon"

tions of the parties thereunder were suspended by operation of law, and there was a complete failure of consideration in connection with the completion of said contract." Plaintiff appeals from the adverse judgment thereafter entered on February 3, 1966.

We agree with the result reached by the trial court.

Under the rule enunciated by Chief Justice Traynor in *Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839], we proceed to make our independent construction of the contract which is in writing and concerning which the extrinsic evidence is not in conflict.

Where one engages another to render services to him personally for a specified period of time, his death before the end of the agreed time terminates the contract. (*Harrison* v. *Conlan* (1865) 92 Mass. (10 Allen) 85, 86.) Where the terms of a contract and the surrounding circumstances indicate that each party entering into the agreement relied upon personal skills, talents or characteristics which no one other than the other contracting party could provide, the death of either terminates the contract prior to the termination date set forth in the agreement. (*Blakely* v. *Sousa* (1900) 197 Pa. 305, 330-331, 332 [47 286, 80 Am.St.Rep. 821].)

"Where distinctly personal considerations are at the foundation of the contract, the relation of the parties is dissolved by the death of him whose personal qualities constituted the particular inducement to the contract. The whole question in each case is one for construction, and depends upon the intention of the parties. [Citation.] In contracts in which performance depends upon the continued existence of a certain person . . . , a condition is implied that the impossibility of performance arising from the perishing of the person . . . shall excuse the performance. The implication arises in spite of the unqualified character of the promissory words, because, from the nature of the contract, it is apparent the parties contracted upon the basis of the continued existence of the particular person . . . [citations.]" (*Smith* v. *Preston* (1897) 170 Ill. 179, 185 [48 N.E. 688] and see *Potts Drug Co.* v. *Benedict* (1909) 156 Cal. 322, 332 [104 P. 432, 25 L.R.A. N.S. 609]; cf. *Masterson* v. *Sine* (1968) 68 Cal.2d 222, 230 [65 Cal.Rptr. 545, 436 P.2d 561]; and *LaRue* v. *Groezinger* (1890) 84 Cal. 281, 285 [24 P. 42, 18 Am.St.Rep. 179].)

Since the contract contains the clause, "It is further understood and agreed that your [plaintiff's] services are rendered in the capacity of an employee . . . ," the follow-

ing from 6 Corbin on Contracts (1962) section 1335, page 381 is also pertinent: "The death of the master or employer does not necessarily have the same effect as the death of the servant. If an essential part of the master's duty is to direct and supervise the work personally, his death makes this impossible. Likewise, it makes performance of the agreed work by the servant impossible, for the work was to be work specified and directed by the master. The master's duty to pay wages does not require his personal performance and has not become impossible; but it is nevertheless discharged, because its condition precedent—the rendition of the service—has become impossible."

The wording of the contract explicitly conveys an intent of the parties that the contract be conditioned upon Cole's continued existence and personal participation. No doubt Nat King Cole's artistic skill, talent and renown were inducements to plaintiff to enter into the contract. Plaintiff's services were to be rendered exclusively to Cole personally or to such corporation or company to which Cole would be rendering services, and at such times and places as Cole was to designate. Cole's personal appearance or personal recording was an implied condition precedent to plaintiff's rendition of services as a musical director. With Nat King Cole's untimely demise, both parties were excused from further performance and the contract terminated.

The only instance in which plaintiff rendered services in Cole's absence was a performance in connection with the dedication of the Music Center (Dorothy Chandler Music Pavilion) in Los Angeles Civic Center on December 11, 1964. Frank Sinatra appeared in lieu of Nat King Cole as a "last minute substitute" and plaintiff, who conducted performances while Cole was off stage in the past, conducted this particular performance. This arrangement was devised at Cole's request as his hospitalization on December 8, 1964, just three days prior to the scheduled performance permitted no complete change of program. This single instance of plaintiff rendering services in absence of Nat King Cole's personal participation cannot serve to alter the basic personal nature of the contract implicitly conditioned upon Cole's continued existence and personal activity.

The judgment is affirmed.

Kaus, P. J., and Hufstedler, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 15, 1968.