[Civ. No. 6260. Fifth Dist. Aug. 21, 1981.]

CARDIO SYSTEMS, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
VALLEY CHILDREN'S HOSPITAL AND GUIDANCE CLINIC,
Real Party in Interest.

**COUNSEL**

Foley, McIntosh & Foley and James D. Claytor for Petitioners.

No appearance for Respondent.

Stammer, McKnight, Barnum & Bailey and Carey H. Johnson for Real Party in Interest.

OPINION

HANSON (P. D.), J.—Petitioners seek a writ of mandate ordering the trial court to vacate an order of March 23, 1981, entered against them on their defense of a good-faith dismissal as a bar to cross-complainant Valley Children's Hospital and Guidance Clinic's (Hospital's) claim for equitable indemnity. (Code Civ. Proc., § 877.)

The trial court ruled that the dismissal, for costs, of petitioners in plaintiffs' action for wrongful death is not a bar, under Code of Civil Procedure section 877, to Hospital's continuing action on its cross-complaint for partial equitable indemnity.

Plaintiffs Shirley Kafai, Shaharm Kafai, Bahram Kafai, Bahman Kafai, Shahla Kafai, Roya Kafai, Rana Kafai and Ali Kafai, widow and seven children of Manoocher Kafai, on July 9, 1976, filed an action (No. 205038-3) for damages in Fresno County Superior Court (respondent) for Mr. Kafai's wrongful death naming as defendants real party in interest Hospital, several doctors and several Does. A first amended complaint filed by stipulation of counsel on January 14, 1977, added petitioners Dennis Bethke, doing business as Life Support Systems, and Cardio Systems, Inc. (all hereafter Cardio), and real party in interest Cardiovascular Instruments Corporation (CINCO) as parties defendant. On December 15, 1978, by leave of court, Hospital filed a cross-complaint for partial indemnity against both Cardio and CINCO. On February 8, 1979, CINCO also cross-complained against Cardio for partial indemnity. Cardio answered the cross-complaints.

On April 26, 1979, plaintiffs filed a dismissal without prejudice as to Cardio; the consideration for the dismissal was a waiver of costs by Cardio.

On or about May 26, 1979, Hospital entered into an agreement with plaintiffs for "release of all claims" in consideration of the payment of $1 million to the plaintiffs. Plaintiffs subsequently dismissed all other parties who had appeared. Hospital and CINCO pursued their cross-complaints against Cardio.

Cardio, pursuant to an order of the court, amended its answers to include as an affirmative defense and bar to recovery for partial equitable indemnity a dismissal in good faith by plaintiffs. (Code Civ. Proc., § 877.) The trial court also granted Cardio's motion (Code Civ. Proc.,

§ 597) for a separate trial of the affirmative defense under section 877 to be held before trial of the main action on the cross-complaints.

Trial by the court was held November 25 and 26, 1980. After hearing testimony and arguments of counsel, the judge ruled from the bench that, although he found "no collusion as that term is ordinarily understood . . ., to in any way injure the settling defendant [Hospital]," nor "bad faith in the usual concept of that term," he could not find the dismissal as to Cardio, which was without consideration other than the waiver of costs, a good faith dismissal as that concept is used in Code of Civil Procedure[1] section 877. The court ordered plaintiffs' action as to defendant CINCO dismissed because, although named in plaintiffs' amended complaint, CINCO was never served. (Code Civ. Proc., § 581a, subd. (a).)

Findings of fact and conclusions of law were requested at the close of the judge's ruling; they were signed March 23, 1981, and lodged with this court April 2, 1981.

In the interim, on February 18, 1981, Cardio filed a petition for writ of mandate in this court seeking to have the ruling of the trial court set aside. After various pleadings and points and authorities were filed, copies of the court's findings were lodged, as well as a copy of plaintiffs' release of all claims against Hospital; an order to show cause issued April 20, 1981. CINCO remained in the action as a cross-defendant and cross-complainant, but is not a party to this writ proceeding.

The evidence produced at the trial showed that Mr. Kafai died on the operating table during open-heart surgery at Hospital. An embolism of the brain was caused when the heart-lung machine pumped air into a sump-line tube which was inserted in a catheter in the left ventricle of the patient's heart; an incorrect assembly allowed the tube to inject air into the heart instead of creating a suction to remove blood from the patient.

Cardio was the distributor of the heart-lung machine; CINCO manufactured it; Bethke delivered it to Hospital and instructed the hospital staff as to its operation.

---

[1]Unless otherwise indicated, all statutory references shall be to the Code of Civil Procedure.

The perfusionist who operated the heart-lung machine during the Kafai surgery testified that she incorrectly attached the tubing that was designed to bring blood from the heart to be filtered, oxygenated and pumped back into the patient. It was her understanding that this error caused air to be pumped into Mr. Kafai's body.

Hospital's expert, Dr. Black, a product-safety and human-factors engineer, testified, as part of an offer of proof by counsel for Hospital, that in his opinion the CINCO heart-lung machine used in the Kafai operation was defective in several particulars. Dr. Black cited several safety factors which he felt were necessary to make the machine nondefective: a checklist for operating personnel; arrows on the tubing and the pump; a system of grommets which would mechanically prevent incorrect insertion of the tubing into the pump; and a one-way valve that would prevent air from being forced into a patient.

Hospital's counsel made a further offer of proof that his experts, if called, would testify that the machine was also defective in that it had an inadequate forward-reverse switch.

Plaintiffs' former counsel, Mr. Brazier, testified that the complaint was amended, immediately before the running of the one-year statute of limitations, to name Cardio and CINCO, distributor and manufacturer of the heart-lung machine. He recalled that, prior to the dismissal, he felt there was a substantial case against the manufacturer and distributor. Mr. Brazier explained the reasons for the dismissal of Cardio by plaintiffs: ". . . , it's basically a matter of trial tactics. I think the way the case was discovered, we found that one of two things had happened in the operating room as best we could determine, one, that the pump winding for the . . ., sump pump had either been put in backwards and the machine was started, because the pump winding was in backwards, a vacuum was not created, but there was air at the end of the sump that was injected into the heart.

"The other theory was that there was a switch on the base of the pump that would be put in a forward or a reverse position, and the switch was in the reverse position at the time the pump was started. I thought that on either one of these theories, it would be a relatively simple task to explain how the pump was put together and how it worked and what negligent act or ommission [sic] was done by the employee of the hospital. And I had no desire assuming sufficient assets

and sufficient insurance to complicate a clear liability, relatively simple medical malpractice case by bringing in a products case. I didn't need it. I didn't want it. It would complicate my case, and I had no desire to do so. I thought it was in the best interest of my client not to have the manufacturer in the case.

"Q. And is that why you gave Mr. Bethke a dismissal, Mr. Bethke and his company a dismissal?

"A. Yes, in exchange of waiver of costs."

Mr. Pugh, the accountant for Cardio at the time of the dismissal, was permitted to testify concerning discussion of the suit at a board meeting in March 1979. It was felt that Cardio had very little exposure, and it was determined to approach plaintiffs regarding dismissal, citing the need for a continuance, and "[b]luff[ing] them out" about the complexity of the case. The book value of the corporation in March 1979 was $250,000; the corporation had liability insurance coverage.

Based on the evidence presented at the hearing, the trial court found:

"·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

"5. On April 26, 1979 plaintiffs filed a dismissal without prejudice as to DENNIS H. BETHKE, individually, and doing business as LIFE SUPPORT SYSTEMS, and CARDIO SYSTEMS, INC.

"6. Both as of April 15, 1979, when the aforesaid request for a dismissal was signed, and April 26, 1979, when it was filed, DENNIS H. BETHKE, individually, and doing business as LIFE SUPPORT SYSTEMS, and CARDIO SYSTEMS, INC., knew or should have known that plaintiffs' damages would be substantial.

"7. On April 15 and 26, 1979, the net worth of CARDIO SYSTEMS, INC. was approximately $250,000.00. On said dates, DENNIS BETHKE, individually and doing business as LIFE SUPPORT SYSTEMS, and CARDIO SYSTEMS, INC., knew or should have known that there was some potential liability as to them to plaintiffs.

"8. There was no consideration for the dismissal filed April 26, 1979 other than a waiver of costs.

"9. The overriding and primary purpose for plaintiffs dismissing defendants DENNIS H. BETHKE, individually, and doing business as LIFE SUPPORT SYSTEMS, and CARDIO SYSTEMS, INC. was the tactical decision on the part of plaintiffs' counsel to eliminate said parties from his clients' lawsuit to simplify the issues and obtain a prompt disposition of his clients' claims. Plaintiffs' counsel had reasonably concluded that he would·be able to prove negligence on the part of defendant VALLEY CHILDREN'S HOSPITAL AND GUIDANCE CLINIC, and that defendant VALLEY CHILDREN'S HOSPITAL AND GUIDANCE CLINIC would be able to pay a judgment in the amount anticipated. Plaintiffs' counsel further reasonably concluded that the application of the doctrine of joint and several tort liability would enable him to obtain a judgment against VALLEY CHILDREN'S HOSPITAL AND GUIDANCE CLINIC for the total amount of his clients' damages.

"10. There was no 'collusion' as that term is generally understood (according to Webster's New Collegiate Dictionary, copyright 1949, which defines the term as 'a seciet agreement and cooperation for a fraudulent or a deceitful purpose; deceit; fraud') between plaintiffs and DENNIS H. BETHKE, individually, and doing business as LIFE SUPPORT SYSTEMS, and CARDIO SYSTEMS, INC., in connection with the aforesaid dismissal.

"11. Under the circumstances herein, it would be unreasonable and unfair to permit the dismissal received from plaintiffs to operate as a bar to the claims of VALLEY CHILDREN'S HOSPITAL AND GUIDANCE CLINIC and CARDIOVASCULAR INSTRUMENTS, cross-complainants, for partial indemnity.

"12. There being some potential liability on the part of DENNIS H. BETHKE, individually, and doing business as LIFE SUPPORT SYSTEMS, and CARDIO SYSTEMS, INC., the dismissal for a waiver of costs could not have been reasonably proportionate to the potential liability to plaintiffs of DENNIS BETHKE, individually, and doing business as LIFE SUPPORT SYSTEMS, and CARDIO SYSTEMS, INC.

"13. The burden of proof utilized by the court was as required in the case of Fisher v. Superior Court, (March, 1980) 103 Cal.App. 3rd 434, as modified in 104 Cal.App. 3rd 766c. Specifically, the court found there was a settlement, that the burden of proof fell upon cross-complainants VALLEY CHILDREN'S HOSPITAL AND GUIDANCE CLINIC AND CARDIOVASCULAR INSTRUMENTS to prove the settlement was not in

'good faith,' and that said cross-complainants carried their burden." The trial court further stated: "From the foregoing Findings of Fact the court makes the following Conclusion of Law and enters the following judgment:

"DENNIS H. BETHKE, individually, and doing business as LIFE SUPPORT SYSTEMS, and CARDIO SYSTEMS, INC., did not receive the dismissal filed April 26, 1979 in 'good faith' to the extent that 'good faith' is required before a dismissal can be used as a bar to an action for partial indemnity. Accordingly, said dismissal is not a bar to the claims of VALLEY CHILDREN'S HOSPITAL AND GUIDANCE CLINIC AND CARDIOVASCULAR INSTRUMENTS, cross-complainants, for partial indemnity against DENNIS H. BETHKE, individually, and doing business as LIFE SUPPORT SYSTEMS, and CARDIO SYSTEMS, INC."

Hospital has not questioned the right of Cardio to seek a writ of mandate. As the trial, originally scheduled for May 4, 1981, has been continued to October 5, 1981, no stay order is necessary.

While Code of Civil Procedure section 877,[2] by its terms, discharges a settling defendant only from liability for *contribution* in a joint judgment, in *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], the California Supreme Court applied comparative negligence principles and adopted a doctrine of partial indemnity subject to the application of section 877,[3] but did not solve the dilemma of two good-faith settling defendants.

---

. [2]Code of Civil Procedure section 877 provides: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—[¶] (a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and [¶] (b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors."

[3]"Although section 877 reflects a strong public policy in favor of settlement, this statutory policy does not in any way conflict with the recognition of a common law partial indemnity doctrine but rather can, and should, be preserved as an integral part of the partial indemnity doctrine that we adopt today. Thus, while we recognize that section 877, by its terms, releases a settling tortfeasor only from liability for contribution and not partial indemnity, we conclude that from a realistic perspective the legislative policy underlying the provision dictates that a tortfeasor who has entered into a 'good faith' settlement (see *River Garden Farms, Inc. v. Superior Court, supra*, 26 Cal. App.3d 986 [103 Cal.Rptr. 498]) with the plaintiff must also be discharged from any claim for partial or comparative indemnity that may be pressed by a concurrent tort-

In *Sears, Roebuck & Co.* v. *International Harvester Co.* (1978) 82 Cal.App.3d 492, 497 [147 Cal.Rptr. 262], the court considered whether a settling concurrent tortfeasor may continue to pursue his right of partial indemnity asserted by a presettlement cross-complaint against a party not named by plaintiff and concluded that a settling concurrent tortfeasor may pursue his right of equitable partial indemnity against other concurrent tortfeasors. This issue had not been considered in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], *American Motorcycle Assn.*, or *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441].

■ Cardio contends that its release by plaintiffs in exchange for a waiver of costs was a good faith settlement which should bar Hospital from proceeding on the cross-complaint[4] and that as a matter of law the trial court ruled incorrectly in allowing Hospital to proceed. We agree that the settlement was made in good faith (see *Dompeling* v. *Superior Court* (1981) 117 Cal.App.3d 798 [173 Cal.Rptr. 38]) and, under the wording of the statute, we must agree that Cardio's liability on the cross-complaint is terminated.

The trial court obviously recognized the serious complications in the present law, concluded that there was no collusion nor bad faith in the Cardio settlement in the usual sense, but reasoned that to immunize Cardio would frustrate the entire purpose of the comparative fault cases and the expressed hierarchy of interests as enunciated in those cases.[5]

---

feasor. As the Court of Appeal noted recently in *Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231, 236 [132 Cal.Rptr. 843]: 'Few things would be better calculated to frustrate [section 877's] policy, and to discourage settlement of disputed tort claims, than knowledge that such a settlement lacked finality and would lead to further litigation with one's joint tortfeasors, and perhaps further liability.' This observation is as applicable in a partial indemnity framework as in the contribution context. Moreover, to preserve the incentive to settle which section 877 provides to injured plaintiffs, we conclude that a plaintiff's recovery from nonsettling tortfeasors should be diminished only by the amount that the plaintiff has actually recovered in a good faith settlement, rather than by an amount measured by the settling tortfeasor's proportionate responsibility for the injury. (See Fleming, *Foreword: Comparative Negligence At Last—By Judicial Choice* (1976) 64 Cal.L.Rev. 239, 258-259.)" (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d at pp. 603-604.)

[4]Code of Civil Procedure section 877, subdivision (b).

[5]*Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804; *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578; *Fisher* v. *Superior Court* (1980) 103 Cal.App.3d 434 [163 Cal.Rptr. 47]; *Sears, Roebuck & Co.* v. *International Harvester Co., supra,* 82 Cal.App.3d 492.

However, the court in *American Motorcycle* stated that "settlement" in good faith of the plaintiff's claim would also discharge a defendant from any claim for partial or comparative indemnity *in recognition of the legislative policy expressed in section 877*. None of the parties is arguing that the *American Motorcycle* case is inapplicable to this situation.

The public policies, which often compete with one another, are discussed in *Sears, Roebuck & Co.* v. *International Harvester Co., supra*, 82 Cal.App.3d 492, 496: "We analyze the Supreme Court decisions as creating a hierarchy of interests. First in the hierarchy is maximization of recovery to the injured party for the amount of his injury to the extent fault of others has contributed to it. (See *Li* v. *Yellow Cab Co., supra*, 13 Cal.3d 804, eliminating the bar to recovery of contributory negligence, and *American Motorcycle Assn.* v. *Superior Court, supra*, 20 Cal.3d 578, retaining the rule of joint liability of concurrent tortfeasors and holding named defendants liable for damage assessable against unnamed persons.) Second is encouragement of settlement of the injured party's claim. (*American Motorcycle Assn.* v. *Superior Court, supra*, 20 Cal.3d at pp. 603-604.) Third is the equitable apportionment of liability among the tortfeasors. (*Id.*, 20 Cal.3d at pp. 603-605.)" (*Ibid.*; fn. omitted.)

We hold that the *American Motorcycle* dicta, that a defendant who settles in good faith with plaintiff may elect to be free of the litigation, including partial or comparative indemnity claims of concurrent tortfeasors, does apply to any comparative indemnity claim that Hospital may have.

The trial courts and litigants have been plagued with piecemeal solutions to the complexities of comparative negligence since *Li* v. *Yellow Cab Co., supra*, 13 Cal.3d 804 (see Fleming, *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated with American Motorcycle Association v. Superior Court* (1979) 30 Hastings L.J. 1465). We recognize an obvious need for the adoption of a reasonable rule to aid trial courts with the claims of concurrent settling tortfeasors. In *Fisher* v. *Superior Court, supra*, 103 Cal.App.3d 434, the court noted that since *American Motorcycle* was decided by the California Supreme Court, the superior courts in California have been deluged with cross-complaints for comparative equitable indemnity between alleged joint tortfeasors. However, the good-faith test is the only existing rule provided by statute or case law

and if Cardio settled in good faith with the plaintiffs, Cardio's affirmative defense prevails as a bar to recovery on a claim for equitable indemnity within the concept of the *American Motorcycle* case.

We held in *Dompeling* v. *Superior Court, supra,* 117 Cal.App.3d 798 that a settling defendant owes no duty to a nonsettling codefendant except to refrain from tortious or other wrongful conduct and that, absent such conduct, a settling party may act to further its own interests without regard to the effect of the settlement upon codefendants. (*Id.,* at pp. 809-810.) Cardio Systems acted consistently with that principle and, under the rather simple terms of the statute that the settlement be in good faith, proceeded in good faith.

The trial judge in his oral statement concluded that the dismissal for costs was without collusion, concealment or sinister motive to injure the hospital and was done in good faith within the usual and ordinarily accepted meaning of that term, and that the Cardio defendants "would have been out of their minds not to [settle]." Nevertheless, the court held that the dismissal was not in good faith within the *meaning* of the statute. But, without further legislative clarification, the term "good faith" must be given a meaning within the usual sense of the term; under such a definition Hospital is barred by a good faith dismissal from seeking indemnity against Cardio.[6]

The result is unsatisfactory. The rule permits a plaintiff to insulate a defendant (Cardio) from being liable to a codefendant (Hospital) for comparative indemnity by dismissing against Cardio in consideration of a waiver of costs where the dismissal is motivated by plaintiffs' tactical considerations having little relationship to the potential liability of Cardio. The facts show that plaintiffs' counsel was of the opinion that plaintiffs had a fairly good liability case against Cardio and the reason for the dismissal against Cardio, according to the testimony of plaintiffs' counsel, was to avoid complicating plaintiffs' "clear liability,

---

[6]We have considered many alternative arguments, for example, questioning whether a settlement for "costs" is in fact a "settlement" at all within the meaning of the statute (see discussion in *Commercial U. Ins. Co.* v. *Ford Motor Co.* (9th Cir. 1981) 640 F.2d 210, 212-213), but such arguments offer no solution where a defendant such as Cardio pays $100 in settlement, or $200, and does so without any collusion or fraud or intent to injure. We conclude that plaintiffs and Cardio entered into a settlement as the trial court found, and, as was made clear at the trial level, a settlement in actual good faith. (See *Setzer* v. *Moore* (1927) 202 Cal. 333, 340 [260 P. 550, 55 A.L.R. 423]; Kikel, Comments, *Comparative Negligence, Multiple Parties, and Settlements* (1977) 65 Cal.L.Rev. 1264.)

relatively simple medical malpractice case" against Hospital. The result is fundamentally unfair, and cannot be what the Legislature intended.

The Legislature could not anticipate the problems arising after the Supreme Court's decision in *American Motorcycle Assn.* v. *Superior Court, supra*, 20 Cal.3d 578; however, the governing section (Code Civ. Proc., § 877) needs to be reexamined in light of that decision. The Legislature is equipped with the facilities and the forum to hear from all interested parties and to pass appropriate amendments to Code of Civil Procedure section 877; the Legislature should move with dispatch to prevent the occurrence of such an unfortunate result as in this case.

Let a writ of mandate issue directing the trial court to vacate its order of March 23, 1981, and to enter a new order sustaining Cardio's special defense to the cross-complaint.

Brown (G. A.), P. J., and Franson, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied October 28, 1981.