Barbara M. OWEN and Natalie S. Owen, By and Through their Guardian ad Litem, Vallerie OWEN, and Vallerie Owen, individually, Plaintiffs,

v.

The UNITED STATES of America, Defendant/Third-Party Plaintiff/Appellant and Cross-Appellee,

v.

BRUCE CHURCH, INC., Third-Party Defendant/Counterclaimant/Appellee and Cross-Appellant.

Nos. 82–4227, 82–4246.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 1983.

Decided Aug. 26, 1983.

Gary W. Allen, Washington, D.C., for United States.

Ralph J. LaMontagne, Jr., Kern, Wooley & Maloney, Los Angeles, Cal., for Owen.

Before MERRILL, CHOY and ALARCON, Circuit Judges.

CHOY, Circuit Judge:

After settling a claim brought under the Federal Tort Claims Act, the United States sought partial indemnity from joint tortfeasor Bruce Church, Inc. ("BCI"), an agricultural firm. The claim for indemnity was dismissed by the district court on the ground that under California law, BCI's subsequent settlement with the original tort plaintiff precluded the United States from any indemnity. The Government appeals the dismissal of its indemnity suit, arguing that BCI's subsequent settlement with the original plaintiff was not in "good faith," as is required under the governing California statute. BCI cross-appeals the dismissal of one of its counterclaims against the Government. Both appeals are governed by California law.

We reverse the dismissal of the Government's claim for indemnity and remand it for further proceedings, and affirm the dismissal of BCI's counterclaim.

I. *Background*

On April 22, 1980, at approximately 5:29 p.m., an airplane owned and operated by BCI collided with the side of a mountain while approaching the Salinas, California, airport. The aircraft had been given erroneous directions by an air traffic controller. All three passengers and the pilot were killed.

The wife and children of Stephen Owen, a passenger in the plane, filed a Federal Tort Claims Act action against the United States in federal court, and a separate wrongful-death action against BCI in state court. The Government impleaded BCI in federal court for indemnity, alleging pilot error as a partial cause of the accident.[1] BCI, as third-party defendant in federal court, counterclaimed against the Government for damages it allegedly sustained because of the death of its servant, Stephen Owen.

In August 1981, settlement negotiations between the Government and the Owen heirs began in earnest. BCI declined to participate. The fruit of the Government's negotiations with the Owen heirs was a settlement agreed to on October 6, 1981. This settlement was placed under seal by the district court, but has been accurately described in court as providing the Owen heirs over one million dollars. There is a dispute among the parties whether this settlement should be characterized as representing the full value of the Owen claim against all tortfeasors. The Government strenuously argues the affirmative; counsel for the Owen heirs, in a district court affidavit, argues the negative; and BCI correctly notes that this is a factual conclusion not made by the court below. Nevertheless, we have no difficulty in concluding that the settlement was substantially for the full value of the Owen claim since, on the undisputed facts, the Government payment represented over 95% of the eventual total recovery by the Owen heirs.[2]

Subsequent to settlement with the Government, the Owen heirs and BCI en-

---

1. California law allows partial indemnity among joint tortfeasors on the basis of comparative negligence. *American Motorcycle Ass'n v. Superior Court*, 20 Cal.3d 578, 578 P.2d 899, 146 Cal.Rptr. 182 (1978).

2. The district court's statements at the "good faith hearing" suggest that it agreed with the Government's characterization of the settlement. It said:

tered settlement negotiations that quickly resulted in a $55,000 payment to the Owen heirs contingent upon district court certification that the agreement was made in good faith as required by Cal.Civ.Proc.Code § 877 (West 1980). This provision reads:

> Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—
>
> (a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and
>
> (b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors.

Accordingly, if BCI's settlement with the heirs was "in good faith," the Government's indemnity action against BCI would be terminated by operation of § 877(b).

I think that if 877 is to apply, the Government is entitled to the benefit of the $55,000 or whatever else is paid to Mrs. Owen. Because what Mrs. Owen got in the settlement with the Government was, in effect, the final judgment in that action. That was it. And if she was going to get additional money afterwards, if it is to fall under 877, it should inure to the benefit of the Government.

C.R. 90 at 11–12. Later in the hearing, the court said of Mrs. Owen's role in settling with BCI, "[T]here is no risk at all. She already has her million dollars." *Id.* at 16.

**3.** Cal.Civ.Proc.Code § 877.6 provides:

(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors, upon giving notice thereof in the manner provided in Sections 1010 and 1011 at least 20 days before the hearing. Upon a showing of good cause, the court may shorten the time for giving the required notice to permit the determination of the issue to be made before the commencement of the trial of the action, or before the verdict or judgment if settlement is made after the trial has commenced.

Pursuant to Cal.Civ.Proc.Code § 877.6 (West Supp.1983),[3] the Government requested a hearing to determine whether the BCI-Owen settlement was made in good faith. At the § 877.6 hearing, the district court stated its intent to deny BCI the protections of § 877(b). Its reasoning, expressed at the hearing, was that the case had been terminated by the Government's settlement, and that any payment by BCI in the case should be given to the Government, and not to the Owen heirs. The court said of the settlement, "It pulls the rug out from under the Government's claim without any offsetting benefit to them, and that is not the way the statute [§ 877] was designed." C.R. 90 at 10. However, the court later reversed itself on the basis of *Mill Valley Refuse Co. v. Superior Court,* 108 Cal.App.3d 707, 166 Cal.Rptr. 687 (1980),[4] and certified the BCI-Owen settlement as in conformity with § 877.

The court had previously dismissed BCI's counterclaim against the Government on the ground that under California law, an employer does not have an action based on the death of a servant.

Both parties appeal.

(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counter-affidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing.

(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

(d) The party asserting the lack of good faith shall have the burden of proof on that issue.

**4.** The court in *Mill Valley* held that a settling tortfeasor does not lose the protections of § 877(b) merely because the party claiming indemnity has previously settled with the plaintiff. 108 Cal.App.3d at 710–11, 166 Cal.Rptr. at 689–90. *Mill Valley* does not address the case where the first settlor, as here, has made a substantially full-value settlement.

## II. *The Government's Appeal*

### A. Good Faith Settlement Under California Law.

This court has previously interpreted § 877 in *Commercial Union Insurance Co. v. Ford Motor Co.,* 640 F.2d 210 (9th Cir.), *cert. denied,* 454 U.S. 858, 102 S.Ct. 310, 70 L.Ed.2d 154 (1981). In *Commercial Union,* we made a thorough canvass of the California case law construing § 877. We found that "the expansion of § 877 to prevent a party from seeking indemnification from another should apply only when the policy of settlement has been furthered and a settlement is made in good faith." 640 F.2d at 213. We defined the test of § 877 good faith as follows:

> Section 877 applies to settlement made in good faith only. Individuals not participating in the settlement are barred from seeking contribution only if the settling parties acted in good faith with respect to them. Hence, good faith of the dismissal alone is not sufficient. The dismissal must represent a settlement which is a good faith determination of relative liabilities. Only in this situation are both policies behind § 877—equity and settlement—furthered.

*Id.* The Government argues that BCI and Owen did not act in good faith with respect to the Government because the $55,000 settlement does not reflect a good-faith determination of BCI's relative liability to the other parties in this action.

BCI argues that the *Commercial Union* good-faith test has been superseded by subsequent opinions of the California courts of appeal. In particular, they argue that the standard for § 877 good faith was redefined in *Dompeling v. Superior Court,* 117 Cal.App.3d 798, 173 Cal.Rptr. 38 (1981). In *Dompeling,* a divided court of appeal held for the first time that

[t]he settling parties owe the nonsettling defendants a legal duty to refrain from tortious or other wrongful conduct; absent conduct violative of such duty, the settling parties may act to further their respective interests without regard to the effect of their settlement upon other defendants.

*Id.* at 809–10, 173 Cal.Rptr. at 45.[5] The *Dompeling* court further decided that § 877 did not impose upon settling tortfeasors any duty to pay a proportionate amount of their liability. *Id.* The *Dompeling* test has been followed in *Cardio Systems, Inc. v. Superior Court,* 122 Cal.App.3d 880, 176 Cal.Rptr. 254 (1981); *Burlington Northern Railroad Co. v. Superior Court,* 137 Cal.App.3d 942, 187 Cal. Rptr. 376 (1982); and *Leverton v. Wysong & Miles Co.,* 143 Cal.App.3d 278, 191 Cal. Rptr. 671 (1983).

These recent decisions by the California courts of appeal that have appeared subsequent to our *Commercial Union* decision require us to reconsider the proper interpretation of § 877. Our interpretation in *Commercial Union* was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect. *See Broussard v. Southern Pacific Transportation Co.,* 665 F.2d 1387, 1389 (5th Cir.1982) (en banc); *Newell v. Harold Shaffer Leasing Co.,* 489 F.2d 103, 107 (5th Cir.1974). The recent decisions from the courts of appeal cast a new light on the question. "In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is ' "convincing evidence that the highest court of the state would decide differently." ' " *Andrade v. City of Phoenix,* 692 F.2d 557, 559 (9th Cir.1982) (per curiam) (quoting *Community National*

---

**5.** The dissenting judge in *Dompeling* suggested a rule more solicitous of absent tortfeasors.

[T]he price of the settlement must be coupled with other factors—personal animus towards non-settling alleged tortfeasors or *destruction of third party litigation between alleged tortfeasors*—in order to establish a "bad faith" settlement.

. . . .

... I believe that "bad faith" settlements are those types of settlements which are so unfair to some of the litigants that courts refuse to give them enforcement.

117 Cal.App.3d at 811–812, 813, 173 Cal.Rptr. at 46, 47 (Zenovich, J., dissenting) (citing *Commercial Union;* emphasis added).

*Bank v. Fidelity & Deposit Co.,* 563 F.2d 1319, 1321 n. 1 (9th Cir.1977)).

We feel that this case presents one of those rare instances where convincing evidence exists that the highest court of a state will not follow the result reached by some of that state's inferior appellate courts. It appears manifest that the unduly restrictive *Dompeling* test is but a temporary stop on the path of California law. For several reasons, we will adhere to *Commercial Union* as the authoritative expression of § 877 as it will be interpreted by the California Supreme Court.

*Dompeling*'s first defect is its plain conflict with *River Garden Farms, Inc. v. Superior Court,* 26 Cal.App.3d 986, 103 Cal.Rptr. 498 (1972), which is still described as "the seminal authority for evaluating good faith in a settlement," *Kohn v. Superior Court,* 142 Cal.App.3d 323, 327, 191 Cal.Rptr. 78, 81 (1983), and upon which we placed considerable reliance in *Commercial Union. Dompeling* held that only wrongful or tortious behavior violates § 877's requirement of good faith, while the *River Garden Farms* court eschewed such a narrow limitation:

> Lack of good faith encompasses many kinds of behavior. It may characterize one or both sides to a settlement. When profit is involved, the ingenuity of man spawns limitless varieties of unfairness. Thus, formulation of a precise definition of good faith is neither possible nor practicable. The Legislature has here incorporated by reference the general equitable principle of contribution law which frowns on unfair settlements, including those which are so poorly related to the value of the case as to impose a potentially disproportionate cost on the defendant ultimately selected for suit.

26 Cal.App.3d at 997, 103 Cal.Rptr. at 506. *Dompeling* would allow imposition of a disproportionate burden upon nonsettling tortfeasors if not done wrongfully or tortiously, however that may be judged. The *Dompel-*

*ing* rule pays little deference to what *River Garden Farms* termed one of the major goals of the 1957 tort legislation that enacted § 877, namely, "equitable sharing of costs among the parties at fault." *Id.* at 993, 103 Cal.Rptr. at 503. It is significant that the California Supreme Court, in *American Motorcycle Association v. Superior Court,* 20 Cal.3d 578, 578 P.2d 899, 146 Cal.Rptr. 182 (1978), cited *River Garden Farms* for its definition of good faith under § 877. *Id.* at 604, 578 P.2d at 915, 146 Cal.Rptr. at 198.

Two of the courts that have applied the *Dompeling* test have expressed dissatisfaction with that test's results. In *Cardio Systems, Inc. v. Superior Court,* 122 Cal.App.3d 880, 176 Cal.Rptr. 254 (1981), the court made the following observation upon the result it felt compelled to reach under the *Dompeling* test: "The result is fundamentally unfair, and *cannot be what the Legislature intended." Id.* at 891, 176 Cal.Rptr. at 260 (emphasis added). In *Burlington Northern Railroad Co. v. Superior Court,* 137 Cal.App.3d 942, 187 Cal.Rptr. 376 (1982), the court felt compelled under the *Dompeling* test to reverse the trial court's finding that a settlement had not been made in good faith as required by § 877. Despite its reversal, the *Burlington Northern* court admitted that "[t]he trial court's conclusion that the settlement is against public policy has, of course, considerable logical and equitable support." *Id.* at 946, 187 Cal.Rptr. at 378. It further noted that "[t]he fairness of such a result seems highly debatable," *id.,* 187 Cal.Rptr. at 379, but concluded that any remedy must be legislative. *Burlington Northern* makes clear that court's conclusion, which we share, that the *Dompeling* test has essentially written equity out of the test for § 877 good faith.[6] *But see Leverton v. Wysong & Miles Co.,* 143 Cal. App.3d 278, 289–90, 191 Cal.Rptr. 671, 679–80 (1983) (endorsing *Dompeling* test).

---

6. *Cf. In re Waverly Accident of February 22–24, 1978,* 502 F.Supp. 1 (M.D.Tenn.1979), where the court explicitly used the *River Garden Farms* good-faith test to deny a good-faith cer-

tification to a settlement almost identical in form to the one considered in *Burlington Northern.*

One last datum supporting our conclusion that the California Supreme Court will write equity back into § 877 is found in that court's opinion in *American Motorcycle.* In that case, the Court announced its intent to modify the 1957 tort legislation, of which § 877 is a part, to further the goals of equity.

> Nothing in the legislative history suggests that the Legislature intended by the enactment to preempt the field or to foreclose future judicial developments which further the act's principal purpose of ameliorating the harshness and inequity of the old no contribution rule. Under these circumstances, we see no reason to interpret the legislation as establishing a bar to judicial innovation.

20 Cal.3d at 601, 578 P.2d at 914, 146 Cal. Rptr. at 197. We continue to believe that the *Commercial Union* approach, based on the goals of equity and promotion of settlements as enunciated in *River Garden Farms, supra,* rightly predicts what the California Supreme Court will hold.

B. Application Of California Law Here.

■ We turn now to the application of *Commercial Union* to this case. The lower court's finding of good faith is a finding of fact. *River Garden Farms, supra,* 26 Cal. App.3d at 998, 103 Cal.Rptr. at 506. We will reverse this finding only upon a showing that it was clearly erroneous because of lack of evidentiary support or erroneous application of law. *Power v. Union Pacific Railroad Co.,* 655 F.2d 1380, 1382–83 (9th Cir.1981).

■ A review of the record plainly shows that the BCI-Owen settlement was not entered into in good faith with respect to the Government, as is required under § 877. *Commercial Union,* 640 F.2d at 213; *River Garden Farms,* 26 Cal.App.3d at 996, 103 Cal.Rptr. at 505. There can be no doubt

that the BCI-Owen settlement was not a good-faith reflection of those parties' "relative liability." *Commercial Union* at 213. Instead, BCI and the Owen heirs bargained over the price of BCI's § 877(b) immunity from the Government's indemnity suit. As the district court stated, "a settlement made ... by another potential indemnitor or contributor to relieve himself of that obligation is not within the purpose of that section." C.R. 90 at 11. There must be more than a bargain with intent to foreclose indemnity suits. There must be a settlement that generally reflects a good-faith estimate of the relative liabilities of the parties at the time of settlement. It is clear that this essential qualification was lacking here.

The BCI-Owen settlement was not a good-faith determination of the relative liabilities of the parties because neither side believed that BCI had any liability to the Owen heirs in the wake of the Government's settlement.[7] This conclusion is compelled by a reading of the affidavits submitted by counsel for BCI and the Owen heirs in support of their settlement.[8] Counsel for the Owen heirs told the court:

> In evaluating the settlement possibilities with BRUCE CHURCH, INC., [we] considered that:
>
> (a) Federal Court judgments and settlements are frequently greater than Monterey County [site of the state court suit] judgments or settlements;
>
> (b) The overwhelming evidence pointed to clear and direct acts and/or failures to act by the Government as the cause of the accident;
>
> (c) That in the State Court action only BRUCE CHURCH, INC. would be represented and the Government would be a prime absent tort feasor [sic] at which BRUCE CHURCH, INC. would direct the

---

7. Had BCI and the Owen heirs concluded this settlement before the Government settled the case, we would have no occasion to question the propriety of the good faith of the award. But after the Government settled, BCI's relative liability had become qualitatively altered. We

judge BCI's settlement as of the time it was made.

8. The statements of counsel regarding the circumstances surrounding settlement are competent evidence on the question of good faith. *See Commercial Union,* 640 F.2d at 213.

jury's attention as the sole cause of the accident;

(d) The very real possibility that a jury would determine that the sole cause of the accident was the negligence and breach of Federal Aviation Administration Rules and Regulations by the Air Traffic Controllers, *resulting in a defense verdict . . . .*"

C.R. 75 at 5 (emphasis added). Counsel for BCI submitted an affidavit that confirmed the view that BCI's state court exposure was minimal.

I have come to the conclusion that there is a very good chance that the Owen Plaintiffs will not be able to establish liability against BRUCE CHURCH, INC., in the State Court action and that if liability was to be established by way of verdict, the amount of such verdict would be more than offset by the credit available to BRUCE CHURCH, INC., from the prior settlement with the UNITED STATES OF AMERICA.[9]

That over the past several months I have expressed my opinions to counsel for the Owen Plaintiffs . . . and based on my views of the case, initially solicited a dismissal of the action against BRUCE CHURCH, INC., without any payment toward the settlement . . . .

C.R. 65 at 7.

Both sides, by their own admission, agreed that BCI had minimal exposure to the Owen heirs. Indeed, BCI had steadfastly refused to even discuss settlement until *immediately after* the Government settled with the Owen heirs, at which point it discussed *and concluded* a settlement with the Owen heirs within a matter of a few weeks. This "tactical maneuvering" by BCI, *Commercial Union*, 640 F.2d at 214, is unquestionably a factor probative of BCI's good faith. It serves to emphasize that BCI and the Owen heirs were not bargaining over BCI's relative liability to the Owen heirs but over BCI's liability to the Government. BCI's refusal to bargain with the Government over this liability is further evidence of bad faith toward an absent tortfeasor. The dismissal of the Government's third-party action against BCI must therefore be reversed because of an erroneous application of the controlling law.[10]

Allowing a settlement of this nature to pass under § 877 would advance neither of the statute's goals of equity and promotion of settlement. It is inequitable because it fails to reflect the relative liabilities of the parties *inter sese.* Perhaps even more disturbing is the effect this settlement would have on the inclination of future parties to settle claims. In this case, the Government made a prompt, substantially full-value settlement with the Owen heirs. It was willing to compensate the victim of the tort promptly and fully because of the availability of a later determination of the relative liability for the damages between both tortfeasors. Without such assurance, the Government would not have made early and full compensation to the tort victims. And, of course, if § 877 does not protect the Government in this case, future deep-pocket tortfeasors will not make early and full compensation because of the fear that another tortfeasor will manipulate the statute to achieve immunity from an indemnity action. Settlements would be discouraged, and the true loser would be that party most deserving of judicial solicitude, the tort victim.

We intimate no opinion on the merits of the Government's indemnity claim, but merely hold that the Government "should

---

**9.** Section 877(a) allows nonsettling tortfeasors to take as a credit against any judgment entered against them monies already received by the plaintiff through settlement. (Our footnote.)

**10.** We have not discovered any California decision that has considered a settlement on all fours with the one presented in this case. The *Mill Valley* case discussed in footnote 4 is only similar in the respect that it concerned a settlor who was sued for indemnity by a previously settling tortfeasor. Although, as we have stated, we believe that *Commercial Union* applies the proper standard for consideration of good faith under § 877, we are unwilling to assume that a court following the *Dompeling* approach would necessarily reach a different conclusion on these facts.

be given its day in court to determine whether [BCI] is liable for partial indemnity." *Commercial Union,* 640 F.2d at 214.

III. *BCI's Appeal*

BCI appeals the dismissal of its counterclaim based on the death of its servant, Stephen Owen. BCI argues that the claim is authorized by common law negligence doctrine and, more specifically, by Cal.Civ. Code § 49(c) (West 1982), which states that "[t]he rights of personal relations forbid: ... (c) Any injury to a servant which affects his ability to serve his master, other than seduction, abduction or criminal conversation." The district court dismissed the claim on the authority of *Knowlton v. Pacific Southwest Airlines, Inc.,* 113 Cal. App.3d 152, 169 Cal.Rptr. 668 (1980), which squarely holds that an employer has no cause of action for the *death* of its servant.

BCI argues that the *Knowlton* decision should not control for two reasons. First, the *Knowlton* holding cannot be derived from the authority there cited, and thus would not be followed by the Supreme Court. Second, the *Knowlton* holding should only apply to wrongful death actions specifically so denoted; since this counterclaim has not been so denoted, *Knowlton* does not control.

▪ BCI's contention that the *Knowlton* decision does not logically follow from the authority of two of the cases there cited is not totally without merit.[11] However, there is no indication that the California Supreme Court would not follow *Knowlton.* Indeed, just the opposite is true. That

court has recently referred to Cal.Civ.Code 49(c) as antique, archaic, and outmoded, and suggested it may not even apply to business employees. *Offshore Rental Co. v. Continental Oil Co.,* 22 Cal.3d 157, 168, 583 P.2d 721, 728, 148 Cal.Rptr. 867, 874 (1978). Another Supreme Court case, *Steed v. Imperial Airlines,* 12 Cal.3d 115, 524 P.2d 801, 115 Cal.Rptr. 329 (1974), *appeal dismissed,* 420 U.S. 916, 95 S.Ct. 1108, 43 L.Ed.2d 387 (1975), is even more telling on BCI's argument. In *Steed,* the Court denied recovery to a dependent stepdaughter who sued for the wrongful death of her stepfather. The Court stated, "It is well settled that the right to bring an action for the wrongful death of a human being is limited to the persons described in Code of Civil Procedure § 377," California's wrongful death statute. 12 Cal.3d at 119, 524 P.2d at 803, 115 Cal.Rptr. at 331. The stepdaughter could not sue because, at the time of suit, a dependent stepdaughter was not among those persons specifically granted standing by Cal.Civ.Proc.Code § 377.[12] If the Court would not allow a dependent stepdaughter to sue for the wrongful death of her stepfather, it is extremely unlikely that the Court would allow an action by a decedent's employer, who is also omitted from those persons specifically granted standing by Cal. Civ.Proc.Code § 377. The quoted language also disposes of BCI's second argument. It plainly requires all actions premised on the death of another human to be within the ambit of § 377. *Accord, Justus v. Atchison,* 19 Cal.3d 564, 574–75, 565 P.2d 122, 128–29, 139 Cal.Rptr. 97, 103–04 (1977).[13]

---

11. The *Knowlton* court cited *Fifield Manor v. Finston,* 54 Cal.2d 632, 354 P.2d 1073, 7 Cal. Rptr. 377 (1960), for the proposition that § 49(c) only refers to injuries suffered while the servant is alive. *Fifield Manor* provides little support for this proposition. Similarly, the *Knowlton* court cited *Farnon v. Cole,* 259 Cal.App.2d 855, 66 Cal.Rptr. 673 (1968), for the proposition that the employer's rights relative to the servant ends with the death of the servant. *Farnon's* holding appears to be more limited. It held that the death of an employer terminated the employer's duty to pay an employee under a personal services contract. Although one might fairly challenge the use of these two cases as authority, *Knowlton* is more

than adequately supported by the *Steed* case, discussed immediately *infra.*

12. Section 377 was later amended in 1975 to grant standing to dependent stepchildren. 1975 Cal.Stat. ch. 334, § 1, p. 784.

13. *See also Nieto v. City of Los Angeles,* 138 Cal.App.3d 464, 188 Cal.Rptr. 31 (1982), where the putative spouse of a decedent attempted to bring an action for quasi-intentional interference with contractual relations, negligence, and breach of warranty. The plaintiff conceded she was in actuality bringing a wrongful-death action, and accordingly had her action dismissed. Putative spouses lack standing under Cal.Civ. Proc.Code § 377.

## IV. *Conclusion*

We affirm the district court's dismissal of BCI's counterclaim. We reverse the dismissal of the Government's indemnity action and remand it for further proceedings.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

MERRILL, Circuit Judge, concurring in part and dissenting in part:

I concur in the affirmance of that portion of the District Court's judgment dismissing BCI's counterclaim.

As to the government's appeal, I concur in the holding of the majority that *Commercial Union* remains a fair prediction of how § 877 will ultimately be interpreted by the California Supreme Court and accordingly that the BCI settlement under § 877 must be found to represent a good faith determination of how the liability of the alleged tort-feasors to the Owens should be apportioned between them. *See Commercial Union*, 640 F.2d at 213.

I dissent from the holding of the majority (Part II B of its Opinion) that as matter of law the BCI settlement did not represent such a fair determination. I agree that BCI appears to have been more concerned with its potential liability to the United States than with its liability to the Owens, and that disposition of the claim of the United States clearly appears to have been a major consideration for BCI's settlement with the Owens. It does not follow from these facts, however, that $55,000 as against $1,000,000+ was not a fair apportionment of liability between the two alleged tort-feasors. The question is not whether the parties intended it to be such, but whether it was such in fact.

That question is not one that we can reach on this record. It remains a question to be resolved by the District Court. The order of the District Court does not make it clear that it considered the relative liabilities of the tort-feasors in its holding that the settlement was reached in good faith. I would vacate the portion of the judgment dismissing the indemnity action and remand to the District Court with instructions that it make a determination of good faith under § 877 in accordance with our holding in *Commercial Union.*