[Civ. No. 67057. Second Dist., Div. Three. Apr. 28, 1983.]

WYSONG & MILES COMPANY, Cross-complainant and Appellant, v. WESTERN INDUSTRIAL MOVERS, Cross-defendant and Respondent.

COUNSEL

Belcher, Henzie, Biegenzahn, Chertok & Walker and John S. Curtis for Cross-complainant and Appellant.

Overton, Lyman & Prince, George M. Lindahl and Kelley K. Beck for Cross-defendant and Respondent.

OPINION

**LUI, Acting P. J.—**

### SUMMARY OF APPEAL

Appellant, Wysong & Miles Company (hereinafter referred to as appellant or as Wysong & Miles) appeals from the judgment of the superior court

entered pursuant to an order granting summary judgment to respondent, Western Industrial Movers (hereinafter referred to as Movers) on the cross-complaint by Wysong & Miles for equitable indemnity and/or contribution. The grant of summary judgment was predicated on the trial court's earlier finding that a settlement by Movers with the plaintiffs Richard and Anna Leverton was made in "good faith," pursuant to Code of Civil Procedure section 877.6.[1] For the reasons indicated in this opinion, we conclude that there is substantial evidence to support the trial court's determination that the settlement was made in "good faith" pursuant to section 877.6. Accordingly, the summary judgment entered subsequent thereto was proper.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

Plaintiff Richard Leverton was injured when he was struck by a metal object while operating a press brake for his employer, Metal Working Machinery, Inc. (hereinafter referred to as Metal). According to Metal's president, Harry Skillman, Movers had been retained to move the press brake, a heavy piece of equipment, because of their expertise in moving industrial equipment of all sizes and kinds.

The subject press brake was manufactured by Wysong & Miles in 1973. Wichita Clutch Company, Inc. (hereinafter referred to as Wichita) manufactured the clutch assembly for this machine. Metal purchased this used press brake from another party. Plaintiff and one of his coemployees at Metal were engaged to repair and refurbish the press brake. Fifty-five hours were spent refurbishing the machine and its component parts, including the clutch assembly.

The particular press brake in question is a large piece of metal working machinery which is designed to be anchored to the floor. Movers was hired to

---

[1]Hereinafter, all references shall be to the Code of Civil Procedure unless otherwise indicated.

Section 877.6 provides as follows: "(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors, upon giving notice thereof in the manner provided in Sections 1010 and 1011 at least 20 days before the hearing. Upon a showing of good cause, the court may shorten the time for giving the required notice to permit the determination of the issue to be made before the commencement of the trial of the action, or before the verdict or judgment if settlement is made after the trial has commenced. [¶] (b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing. [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault. [¶] (d) The party asserting the lack of good faith shall have the burden of proof on that issue."

move the press brake to Metal and then to move the press brake about Metal's shop once it was refurbished.

Plaintiff was injured while demonstrating the press brake. Skillman and a maintenance mechanic at Metal named James Vickers were present when the accident occurred. According to the declaration of Richard O. Parry, counsel for Movers, the "Plaintiff was allegedly injured while in the course and scope of his employment by a press brake. The machine which allegedly caused injury to the Plaintiff was allegedly repaired by a Co-employee of the Plaintiff. It is alleged that this Defendant [Movers] then moved the machine and that the machine may have been damaged in the move. [¶] The Plaintiff's employer received the machine to rebuild and rework. To make the repairs, witness Joseph Wroblewski stated that the guard was removed from the machine. The machine in question weighs approximately nine tons. Mr. Wroblewski also testified that after the machine was tested the guard was replaced. *Mr. Wroblewski testified that he never heard anyone say that the Machine was damaged when it was moved by this Defendant and further testified that the accident occurred two to three months after the machine was moved.* [¶] Mr. Wroblewski testified that it was he, Wroblewski, and the Plaintiff that were primarily responsible for the repairs to this particular machine. The Cross-Complaint of Wysong and Miles seeks indemnity based on Comparative Fault. This Defendant has filed a Cross-Complaint and should this Motion be granted this Defendant will dismiss the Cross-Complaint. [¶] This Defendant [Movers] has paid $65,000 to both Plaintiffs. This defendant understands that the Plaintiffs' Attorney, as part of this settlement has also compromised the lien on this case." (Italics added.) Counsel Parry's declaration was submitted in support of Movers' motion for an order approving the good faith settlement pursuant to section 877.6.

In the course of discovery, plaintiff advanced two theories of liability: first, that the clutch plate or the flywheel broke as a result of a defect in manufacturing by Wichita; second, that the clutch was broken while it was being moved by Movers.

On May 7, 1979, plaintiffs filed a complaint in the superior court for personal injuries, naming as defendants Wysong & Miles, Movers, and Wichita. After the answers to the complaint were filed, Wysong & Miles filed a cross-complaint for indemnity seeking partial indemnity on a comparative fault basis against cross-defendants Movers and Wichita. Subsequently, Wichita Clutch and Movers filed similar cross-complaints for indemnification, contribution and declaratory relief against the other named defendants.

In December 1981, Movers filed a request for hearing, seeking a determination that a good faith settlement had been made by it with plaintiffs pursuant to

section 877.6. Movers' motion was opposed by Wysong & Miles. On January 4, 1982, the court denied the motion.

Subsequently, on January 13, 1982, Movers filed a motion requesting the trial court reconsider its ruling on the good faith settlement, asserting in its moving papers that the trial court did not find Movers' settlement to have been made in bad faith but instead that the issue presented by said motion would be best handled by a bifurcation at the time of trial. In its moving papers, counsel for Movers stated, "there is no evidence at this time that [Movers] did anything wrong. There is no direct evidence that [Movers] damaged the machine in question." Significantly, Movers attached a copy of a page of the deposition transcript of Wroblewski which indicates that Wroblewski had no information that the press brake was damaged during the move. Said transcript states:

"Q. Did you ever hear either before the accident occurred, or after it occurred, or at any time up until today, that during the move that any portions or any parts of the machine were damaged?

"A. No. The only damage I see was when I came back off vacation and looked at this machine.

"Q. I'll get to that in a second. [¶] *In answer to the question whether or not at the time of the move any parts were damaged, to your knowledge the answer is no?*

"A. *No.*

"Q. Did you subsequently after you came back from vacation inspect this machine and note that there were some damaged parts?

"A. I went to look at it, yeah.

"Q. What did you observe?

"A. That the swivel was busted right out of the holding plate, a complete break in there in the casting.

"Q. This was after you got back from vacation, is that correct?

"A. Yeah, because I had to order new parts for it." (Italics added.)

The motion to reconsider was opposed by both Wysong & Miles and Wichita. In its opposition papers, Wysong & Miles referred to Metal's President Skillman's statements made during his deposition that the machine could

have been damaged during the move, attaching a portion of Skillman's deposition to the transcript. However, a reading of that transcript reflects only that Skillman heard that such a proposition had been asserted but that he had no information at all as to how or when Movers purportedly struck the machine during the move.

Wichita's opposition papers stated that, "[e]xperts who have been consulted regarding the cause of the accident have concluded that the part which fractured and subsequently caused the plaintiff RICHARD LEVERTON to be injured was subject to an impact which was probably sustained during the course of moving the machine." No further elaboration with respect to this statement was contained in Wichita's counsel Burhenn's declaration. The balance of Wichita's objection was based on the fact that the amount tendered to plaintiffs of $65,000 was grossly disproportionate to the amount of the potential verdict and further disproportionate to the workers' compensation lien which then amounted to approximately $234,000. The court heard the motion for reconsideration on February 1, 1982, and again denied the motion on the grounds stated in the opposing points and authorities.

Thereupon, Movers filed a petition for writ of mandate in the Court of Appeal alleging that the trial court denied Movers' request for a good faith determination because the trial court felt the matter should be determined at some later date during a bifurcated trial. Subsequently, Division One of this court granted the petition and issued a peremptory writ of mandate stating that Movers had established that the superior court had not determined whether petitioner's settlement was in good faith although the motion was brought pursuant to section 877.6. The opinion and order of Division One states that "if respondent [superior] court was of the opinion that additional evidence was needed in order to rule on the merits, respondent court could have continued the hearing on the motion for a reasonable period of time but should have rejected the suggestion to delay determination of the motion until a bifurcated trial could be had." The matter was returned to the trial court for a prompt hearing on the merits of Movers' motion filed pursuant to section 877.6.

On return of the matter to the superior court, a hearing was set for April 27, 1982. Wysong & Miles' opposition papers took issue with the "good faith" settlement on the basis of the disproportionate amount of the settlement, i.e., $65,000, in relationship to the claims asserted of over $7 million. Wysong & Miles specifically pointed to plaintiffs' response to interrogatory number 80, propounded by Movers to plaintiffs in which the plaintiffs described their theories against the three defendants as follows: "80. *Discovery is still continuing in this regard.* However, at this point plaintiff contends that the press brake should have had a guard so as to protect it from damage while being moved; that the flywheel may have been improperly manufactured not to specification

by Wichita Clutch Co., Inc., and that Western Industrial Movers damaged the swivel in the flywheel in the process of moving it from one portion of the building to another." (Italics added.)[2] Wysong & Miles characterize this statement as indicating two distinct possibilities: First, that the clutch plate or flywheel broke as a result of being defectively manufactured; and secondly, the other possibility that the clutch plate was broken while being moved by Movers. No opposition was filed by Wichita who, subsequently on April 26, 1982, moved the trial court for a determination as to the good faith determination of its own settlement with plaintiff in the amount of $5,000. Movers also requested the court to make proposed findings of fact and conclusions of law based on the proposals which they submitted.

On April 27, 1982, the trial court found that a good faith settlement had been reached between plaintiffs and Movers. Wysong & Miles filed a motion for reconsideration. The basis for this reconsideration motion was that at the time of the hearing on the issue of good faith settlement, Wichita had filed its own motion to have a $5,000 settlement with plaintiffs declared to be in good faith. Wysong & Miles submitted that since the two settlements had been reached in close chronological proximity and through the same insurance carrier, both motions should be considered together. Wichita's motion was noticed for May 12, 1982, in an unspecified law and motion department and so far as we know was continued on this date and is still pending. Wysong & Miles suggested that both motions be reset and that Movers' motion be heard and reconsidered on May 27, 1982, together with the Wichita motion. Apparently Wysong & Miles' motion to reconsider was denied; however, there is no minute order contained in the record which reflects this.

Subsequently, on May 10, 1982, Movers filed a motion for a summary judgment on the cross-complaint served upon it, basing such motion on the previous ruling of the trial court of April 27, 1982, finding the settlement between Movers and plaintiffs was "in good faith." Movers contended that the fact of the settlement alone entitled it to a dismissal of the cross-complaint against it pursuant to section 877, which provides in pertinent part as follows, "[w]here a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort— . . . [¶] (b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors."

On May 28, 1982, the court below granted Movers' motion for summary judgment on all cross-complaints filed against it and denied Wysong & Miles' motion for reconsideration of the trial court's ruling of April 27, 1982, re-

---

[2]The record presented by way of the joint appendix does not reflect whether the response to the interrogatory was filed before or after Wroblewski's deposition.

garding the good faith settlement between Movers and the plaintiffs. Thereafter, Wysong & Miles again petitioned this court for writ of mandate seeking to direct the trial court to vacate its order of April 27, 1982, declaring the settlement between Movers and the plaintiffs to be in good faith; seeking to direct the trial court to vacate its order of May 28, 1982, denying its motion for reconsideration and granting summary judgment in favor of Movers on the cross-complaint for equitable indemnity or contribution based on comparative fault; and, further seeking to direct the trial court to prepare, file and serve its statement of decision as previously requested by Wysong & Miles pursuant to section 632.[3] The basis for the petition for the writ was Wysong & Miles' contention that the settlement, which constituted one percent of the total exposure, was not in good faith. The petition for a writ of mandate/prohibition was considered and denied by Division One of this court on September 27, 1982. In the meantime, on June 4, 1982, the trial court ordered judgment in favor of Movers on its motion for summary judgment; this judgment was entered on July 15, 1982. Wysong & Miles filed a timely notice of appeal on September 20, 1982, and elected to prepare an appellant's or joint appendix in lieu of a clerk's transcript pursuant to rule 5.1 of the California Rules of Court.[4]

### APPELLANT'S CONTENTIONS ON APPEAL

Wysong & Miles' contentions on appeal may be summarized as follows:

1. The settlement between Movers and plaintiffs lacks good faith because it bears no relationship to either the settling parties' exposure or plaintiffs' damages;

---

[3]Section 632 provides as follows: "In superior, municipal, and justice courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. Upon the request of any party appearing at the trial, made within 10 days after the court announces a tentative decision, or if the trial has lasted less than one day, made prior to submission of the matter for decision, the court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial. The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. After a party has requested such a statement, any party may make proposals as to the content of the statement of decision. [¶] The statement of decision shall be in writing, unless the parties appearing at trial agree otherwise; however, when the trial has been completed within one day, the statement of decision may be made orally on the record in the presence of the parties."

[4]At oral argument, counsel for appellant referred us to a document entitled "DOCUMENTS LODGED WITH THE COURT BUT NOT INTRODUCED INTO EVIDENCE AND NOT INCLUDED IN JOINT APPENDIX" (referred to hereinafter as the document). Apparently at some stage of the briefing of this appeal, appellant's counsel attempted to lodge this document with the court but was refused. Subsequent to oral argument, we asked appellant's counsel to inform us as to the exact documents he was referring to during oral argument. Based upon our inquiry, appellant's counsel lodged the document with us. Said document includes the deposition transcripts of several persons, interrogatories propounded and responses thereto by several of the parties and an intervener, and a brochure concerning the press brake. Since the document contains items which were never introduced into evidence in the proceedings below, permission to file said document was denied. We shall not consider the document in this appeal.

2. In opposing the motion to declare a settlement in "good faith" pursuant to section 877.6, the opposing party need only show the settlement is disproportionate to the ultimate exposure in order to prevail;

3. The trial court has discretion to defer a hearing on the determination of the good faith of a settlement until the time of trial or after trial; and

4. A hearing in advance of trial pursuant to section 877.6 denies opposing party the right to a jury trial, and the right to confront and cross-examine witnesses, therefore depriving Wysong & Miles of its constitutional rights.

DISCUSSION

I

*The Settlement Between Plaintiffs and Movers Does Not Lack Good Faith Simply Because of the Disparity in the Amount of the Settlement Compared to the Damages Claimed in the Complaint*

 The thrust of appellant's thesis is that the $65,000 settlement between Movers and plaintiffs was so disproportionate to the plaintiffs' claim that it lacks good faith. Appellant argues that it need only show a disproportionate amount to prevail in opposing the settlement in question. Appellant relies heavily on the Court of Appeal decision in *River Garden Farms, Inc. v. Superior Court* (1972) 26 Cal.App.3d 986 [103 Cal.Rptr. 498]. In *River Garden Farms,* minors lived with their parents in a small cottage owned by River Garden Farms, their father's employer. The cottage was furnished the father as part of his compensation. While the father was painting the interior of the cottage, a fire broke out and destroyed the structure. Both of the parents were killed and the two children severely burned. The burns apparently left both children with serious and permanent disfigurement and physical handicaps. Four business firms or groups incurred potential liability for the children's injuries: the manufacturer of the paint used by the father; two firms which supplied the liquid propane for a water heater in the cottage; and the owners and operators of River Garden Farms. All defendants incurred potential liabilities for the deaths, except for the River Garden Farms entity which was the father's employer due to the exclusive remedy of workers' compensation. After the appointment of a guardian ad litem, the minor daughter filed a personal injury action against the four defendants. Neither a suit to recover for the minor boy's injuries nor a wrongful death action had yet been filed. Settlement discussions ensued among the parties. In the personal injury action brought by the daughter, River Garden Farms filed a cross-action seeking indemnity from the other defendants. Subsequently, the children's attorney filed a petition requesting court approval of a proposed compromise of the two minors' claims against one of the suppliers of liquid propane gas, Pargas, Inc. The compromise covered both personal injury and wrongful death claims. The court approved a settlement by which Pargas

was released upon the payment of $250,000; the court's order allocated $75,000 to each child's injury claims and $50,000 to each child's wrongful death claim. Several months later, settlements were concluded with two other defendants, the second supplier of the liquid propane and the paint supplier. The children's attorney requested that the aggregate settlement of $1,040,000 be allocated as follows: $350,000 to the wrongful death claim of each child and $170,000 to each personal injury claim. The attorney representing the second propane gas supplier objected to the allocation of $700,000 to the wrongful death claims as excessive. Nevertheless, the trial court found the allocation reasonable and approved it.

River Garden Farms filed a petition for writ of mandate with the Court of Appeal, alleging that the settlement and the releases between the minors and the remaining defendants were not given in good faith as required by section 877. River Garden Farms contended that the allocation of disproportionately large settlements to the wrongful death claims singled it out as the sole target for potentially large personal injury judgments, which it would bear alone, without contribution and with credit only for the relatively minor share of the settlements allocated to the personal injury claims. River Garden Farms did not charge inadequacy of the amount paid in settlement or collusion or other inequitable conduct by the settling defendants. The charge of bad faith was aimed at the claimants only and was based upon the claimants' ex parte, although court-approved, allocation of the settlement proceeds. Justice Friedman examined the legislative history of the tort contribution legislation and stated that the major goals of the legislation were to require an equitable sharing of the costs among the parties at fault and to encourage settlements and stated that, "[t]he California legislation empowers a plaintiff, armed with a strong and lucrative claim, to settle with his antagonists one by one, preserving for the jury the opponent with the most money and least sympathy. The power is great and vulnerable to abuse. In a multi-party case the threat of an unshared judgment against the last remaining defendant—diminished only by meager settlements with his eager fellows—permits a plaintiff to create acute financial pressures bordering on extortion. [Fn. omitted.] Viewed as a demand for settlements which have a reasonable relation to the value of the plaintiff's case, to the strengths and weaknesses of the parties and the financial ability of the settlor, the good faith clause aids the statutory goal of equitable sharing. It also aids the goal of settlement, by preventing a plaintiff from selecting one defendant as the target for enlarged demands after unreasonably low settlements with others." (*Id.*, 26 Cal.App.3d at p. 994.)

The *River Garden Farms* opinion also examines the legislative history of the good faith clause contained in section 877 and the history of the proposed Uniform Contribution Among Tortfeasors Act prepared by the National Conference of Commissioners on Uniform State Laws in 1955. The Uniform Law

Commissioners provided in their 1955 revision of the act a statement declaring that the good faith clause " 'gives the court occasion to determine whether the transaction was collusive, and if so there is no discharge.' " (*Id.,* at p. 995.) Stating that "[t]he notion of collusion advanced by the Uniform Law Commissioners implies something more than mere confederacy. Any negotiated settlement involves cooperation, but not necessarily collusion. It becomes collusive when it is aimed to injure the interests of an absent tortfeasor. Although many kinds of collusive injury are possible, the most obvious and frequent is that created by an unreasonably cheap settlement. Applied *pro tanto* to the ultimate judgment, such a settlement contributes little toward equitable—even though unequal—sharing. As we noted earlier, unreasonably low settlements with the other tortfeasors and the fear of a large unshared judgment may propel the last remaining defendant into a settlement exceeding the plaintiff's remaining damages and transcending that defendant's equitable share. Prevention of collusion is but a means to the end of preventing unreasonably low settlements which prejudice a nonparticipating tortfeasor. The price of a settlement is the prime badge of its good or bad faith." (*Id.,* at p. 996.)

However, the Court of Appeal in *River Garden Farms* did not decide whether the allocation violated the claimant's duty of good faith, stating at page 998 that "[g]*ood or bad faith is a question of fact in each case. (Critz* v. *Farmers Ins. Group, supra,* 230 Cal.App.2d [788] at p. 796 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142].) *Only a trial court may reach a decision, guided by the evidentiary material presented to it.*" (Italics added.)

In denying the writ as inappropriate under the circumstances, the Court of Appeal held that the nonsettling tortfeasor was entitled to assert the invalidity of the releases for lack of good faith by way of answer or new matter. If sustained, the nonsettling tortfeasor would have a claim against the victim and could set it off against any judgment rendered against it.

Appellant would have us read and interpret *River Garden Farms* as holding that unreasonably low settlement in relationship to the potential award is conclusive evidence of the lack of good faith and that any "unreasonably cheap settlement is in of itself collusive." We disagree with appellant's interpretation of *River Garden Farms.*

It is important to note that the decision in *River Garden Farms* predates the enactment of section 877.6. But, more importantly, *River Garden Farms* clearly states that the question of good faith is a decision for the trial court to determine in each case based upon the evidentiary material presented to it.

Appellant cites us portions of the opinion in *Dompeling* v. *Superior Court* (1981) 117 Cal.App.3d 798, 809-810 [173 Cal.Rptr. 38], which states

that: "Bad faith is not established by a showing that a settling defendant paid less than his theoretical proportionate or fair share of the value of plaintiff's case. A settlement always removes the settling defendant from the action; this necessarily results in a possibility that the remaining defendants will suffer judgment greater in amount than if there had been no settlement. [¶] Where plaintiff settles with fewer than all defendants, the defendants are clearly adverse parties. A settling defendant does not owe a legal duty to adverse parties, the nonsettling defendants, to pay the plaintiff more so that the adverse parties may pay the plaintiff less. Plaintiff and defendants are also adverse parties; the plaintiff does not owe a legal duty to the nonsettling defendants to seek more from a settling defendant so that the nonsettling defendants may pay less. [¶] *The settling parties owe the nonsettling defendants a legal duty to refrain from tortious or other wrongful conduct; absent conduct violative of such duty, the settling parties may act to further their respective interests without regard to the effect of their settlement upon other defendants.* [Fn. omitted.] [¶] Practical considerations support our conclusion that bad faith is not shown by the settling defendant's failure to pay his theoretical fair share of plaintiff's damage; that determination requires deciding the amount of plaintiff's damage and who is liable under comparative fault principles. These issues, ordinarily determined at trial, would have to be tried at the hearing to decide whether a settlement was made in good faith. In fact, the pretrial hearing would encompass issues beyond proportionate liability of the parties, such as the subjective motives for settlement, the reason plaintiff accepted less than the settling defendant's theoretical fair share, or the ability of the settling defendant to pay more. [¶] The definition of bad faith articulated here substantially narrows the scope of the pretrial hearing upon the issue of good faith settlement." (Italics added.)

Appellant specifically contends that the third quoted paragraph from *Dompeling* is contrary to the legislative history of section 877. We disagree and voice our approval of such language. Admittedly, the thrust of the quoted language in *Dompeling* conflicts with *River Garden Farms*; but, that decision predates the enactment of section 877.6 and the section controls.

The Legislature's enactment of section 877.6 in 1980 reflects the public policy of encouraging the settlement of lawsuits between litigants provided that where there are joint tortfeasors, such settlements be conducted with "good faith." Section 877.6 provides an opportunity for opposition to such settlement by requiring the trial court to conduct a hearing to determine the good faith of such settlements. Subdivision (d) of this section places the burden of proof on the party asserting the lack of good faith.

Furthermore, subsequent to the enactment of section 877.6, several appellate decisions have recognized the applicability of section 877.6 as encouraging settlements by providing finality to litigation for the settling tortfeasor. (See *Tur-*

con *Construction, Inc.* v. *Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280 [188 Cal.Rptr. 580]; *Golden Bear Forest Products, Inc.* v. *Misale* (1982) 138 Cal.App.3d 573 [188 Cal.Rptr. 48]; and *Burlington Northern R.R. Co.* v. *Superior Court* (1982) 137 Cal.App.3d 942 [187 Cal.Rptr. 376].)

▮▮ In the instant appeal, appellant relies heavily on plaintiffs' response to an interrogatory propounded by Movers. (See pp. 283-284, *ante.*) The response by plaintiffs to that interrogatory pointed out two theories: First that the flywheel may have been improperly manufactured, and, second, that Movers damaged the flywheel in the process of the move. However, the response explicitly stated that "discovery is still continuing in this regard." Appellants fail to comment upon the moving papers which contain a portion of the deposition transcript of plaintiff Richard Leverton's coemployee Wroblewski which indicates that he, Wroblewski, never heard anyone say that the machine was damaged as a result of the move and further that he had no knowledge that any parts of the machine were damaged at the time of the move. In our view, the statements of Wroblewski at his deposition would serve as crucial defense evidence on behalf of Movers. Based on such statements alone, Movers and plaintiffs were justified in entering into the settlement in question.

We have examined appellant's opposition papers filed in connection with Movers' motions pursuant to section 877.6. Appellant's position was based upon its contention that the settlement lacked good faith because of the disproportionate amount between the settlement and the damages claimed by the plaintiffs and on the statements contained in plaintiffs' responses to Movers' interrogatories. Appellant bore the burden of showing the lack of good faith in the settlement. (§ 877.6, subd. (d).) The fact that the settlement was disproportionate to the claims made by plaintiffs' complaint is not in itself evidence of the lack of good faith, because there is evidence which would negate Movers' culpability entirely. Evidence indicating a lack of Movers' culpability effectively dissipates appellant's major contention. As stated in *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183], "[i]n reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. . . . When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." Substantial evidence supports the finding of the court on the issue of good faith.

II

*Appellant's Remaining Contentions Have Been Determined by the Opinion and Order for Peremptory Writ of Mandate Issued by Division One on April 2, 1982*

Appellant contends that the trial court should have discretion to defer a hearing on the subject of good faith until the time of trial or after trial and that the procedures adopted by the trial court below violated its right to a jury trial and the right to confront and cross-examine the witnesses. Appellant argues that section 877.6 contemplates the introduction of evidence by way of self-serving declarations, untested by cross-examination. These issues have been determined by the opinion and order of Division One referred to on page 283, *ante,* and are the law of this case.

In its petition for writ of mandate, Movers challenged the trial court's decision to defer its motion made pursuant to section 877.6 at some later date through a bifurcated trial. Movers contended in the petition that it was entitled to a prompt determination of its motion made pursuant to this section. Appellant failed to file opposition to Movers' petition for writ of mandate. Division One read and considered Movers' petition and determined that Movers "was entitled to a prompt hearing on the merits of its motion pursuant to section 877.6," which specifically provides that the issue of good faith "may be determined by the court on the basis of affidavits . . . ." Division One's opinion and order became final without any request by appellant for rehearing and is now law of the case. Consequently, appellant may not raise these issues in this appeal.

For the reasons indicated above, the judgment entered below is affirmed.

Potter, J., and Danielson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 29, 1983.