[No. E003709. Fourth Dist., Div. Two. June 23, 1987.]

CITY OF GRAND TERRACE, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
HENRY J. BOYTER, Real Party in Interest.

**COUNSEL**

Bruggeman, Smith & Peckham, G. Clifton Smith and Edward Hazel for Petitioners.

No appearance for Respondent.

Parker, Stanbury, McGee, Babcock & Combs and William M. Freeman for Real Party in Interest.

## Opinion

HEWS, J.—In these original proceedings, we are called upon to review the propriety of the trial court's order which determined that plaintiff's settlement with her defendant husband (settlor) had been entered into in good faith under Code of Civil Procedure section 877b, subdivision (c).[1] Defendant City of Grand Terrace and City of Colton (nonsettlors) contend that (1) the motion together with the accompanying threshold declaration by settlor was insufficient as a matter of law under *Tech-Bilt, Inc.,*[2] (2) that the trial court abused its discretion in finding a good faith settlement, (3) that the trial court abused its discretion in dismissing all cross-complaints against settlor for equitable indemnity or for contribution, and (4) that they were deprived of a significant property interest without due process of law.

We have determined from the evidence presented at the hearing on the motion for determination of good faith settlement the trial court erred in making the determination the settlement was made in good faith, and we further determine a subsequent hearing is required.

### Factual and Procedural Background

The factual background is drawn from the verified pleadings presented, the declarations of the parties, and extracts from depositions under oath attached thereto.

Plaintiff Betty Jo Boyter received serious permanent injuries in a single car accident that occurred in the City of Grand Terrace or City of Colton at 1:55 a.m. on May 12, 1984. At the time plaintiff was a passenger in a recently purchased Masarati Biturbo car operated by settlor who was an experienced driver. They were traveling home from Phil's Pub. There was no evidence whether or not either or both of them had consumed any alcoholic beverages while at Phil's or at any time earlier in the evening. The Masarati was proceeding in a southeasterly direction on Barton Road traveling at a speed of 40 miles per hour or less. The weather was clear and dry. The right wheels of the Masarati went off the pavement as the car entered a turn to the left on the roadway and the car plunged down a parallel embankment. Plaintiff was thrown clear of the car. Settlor was somewhat familiar with the road having driven it day and night at least 50 times. He was not surprised by the curve. Paddle markers on the shoulder delineated the curve. Prior to the accident, settlor, a resident of Grand Terrace, had

---

[1] All statutory references in this opinion are to the Code of Civil Procedure unless otherwise indicated.

[2] *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159].

told the City Manager of Grand Terrace and a city councilman in a social context that the curve was dangerous and needed barriers.

Settlor had been employed as a TWA captain pilot for 23 years. Neither his salary nor his net worth were before the trial court at the time of the hearing on the motion. He was insured by United Services Automobile Association (USAA) for liability in the amount of $300,000 per person. The policy was in force at the time of the accident. Prior to the accident, USAA added an endorsement to the policy which specifically excluded liability coverage for injuries suffered by spouses and/or residents of the same household. Once again neither the policy nor the family member exclusionary endorsement were made part of the record at or prior to the court hearing.

Plaintiff sued settlor, the two nonsettlors and the County of San Bernardino in negligence. The action against the County of San Bernardino was later voluntarily dismissed. The theory asserted against the nonsettlors was based on the existence of a dangerous condition in that the roadway was not properly designed, maintained, marked, barricaded or lit. The plaintiff claimed no loss of earnings but claimed to have incurred between $25,000 and $60,000 in medical special damages.

The City of Grand Terrace answered the complaint and cross-complained against settlor and the City of Colton for total and/or partial indemnity, alleging that if liable, its liability was either secondary to the cross-defendants on a passive versus active negligence basis or derivative by reason of the special relationship between cross-complainant and cross-defendants or should be apportioned on a comparative negligence basis.

The City of Colton also filed a similar cross-complaint against settlor.

During the pendency of the instant action, USAA filed a declaratory relief action against its policyholder, settlor, contending the policy written by USAA contained a valid and enforceable family exclusion clause and that because plaintiff was the wife of settlor, there was no coverage due or owing to settlor. Plaintiff's attorney described the coverage issues raised in the declaratory relief action as "unsurmountable." He further stated the settlement with USAA was a "very good result for plaintiff." Thereafter, plaintiff agreed to dismiss her complaint against settlor and USAA agreed to dismiss its declaratory relief action in exchange for $60,000 to be paid to plaintiff by USAA.

Meanwhile, the plaintiff, through counsel, had served an offer to compromise her claim pursuant to section 998 only as to City of Grand Terrace for

$85,000. According to the plaintiff's claim filed with the City of Grand Terrace pursuant to Government Code section 905, plaintiff was claiming $225,000 in damages. Taking into consideration $60,000 to be paid to plaintiff by USAA, plaintiff's estimate of damages in this case ranges from a low of $135,000 to a high of $285,000.

A motion under section 877.6[3] for determination of good faith settlement was filed by settlor, responded to by nonsettlors and following a nontestimonial hearing thereon, the trial court issued an order, portions of which we quote: "... Plaintiff and her husband had a policy of auto liability insurance which had an apparently valid family exclusion clause. The insurance company brought a suit for declaratory relief, but before trial agreed to settle with plaintiff for $60,000. Policy limits were $300,000.

"After reviewing the points and authorities and other materials submitted by petitioner and objector, and in view both of the amount of the settlement and the circumstances under which it was offered and accepted, the Court finds the settlement to have been made in good faith and to be free of any element of collusion, fraud or tortious conduct. It is 'in the ballpark' of the amount plaintiff might have collected from the defendant driver after verdict.

"All complaints and cross complaints against the settling defendant Henry James Boyter for equitable indemnity or for contribution are ordered dismissed."

This petition followed pursuant to section 877.6, subdivision (e), for review of the trial court's determination by writ of mandate.

---

[3] Section 877.6, in pertinent part, provides: "(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasers shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors, upon giving notice thereof in the manner provided in Sections 1010 and 1011 at least 20 days before the hearing. . . .

"(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing.

"(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

"(d) The party asserting the lack of good faith shall have the burden of proof on that issue."

## DISCUSSION

### 1. Sufficiency of the Motion

██ Nonsettlors contend that the motion of settlor was insufficient in that there were no declarations or affidavits describing the basic facts concerning the litigation sufficient to permit the trial court to make an intelligent assessment of the settlement's good faith and to permit an appellate court to determine whether the trial court's determination is supported by the evidence. In essence, nonsettlors contend that a complete factual background in reference to the several factors which must be considered by the trial court under *Tech-Bilt* (*supra,* 38 Cal.3d at p. 499) must be set forth in settlor's motion, affidavits and declarations and if not, the court abuses it discretion in granting the motion. We disagree and in this regard analyze the history and background of section 877.6 and the conflicting settlement objectives that were resolved by *Tech-Bilt*.

We quote at length from the analysis of the development of the requirements necessary for a good faith settlement set forth in *Shane* v. *Superior Court* (1984) 160 Cal.App.3d 1237 [207 Cal.Rptr. 210], and California Practice Guide, Personal Injury (Rutter Group 1986) Bodily Injury Claim Settlements, sections 4:193-4:194.2, pages 4-64-4-66.

"In *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] (AMA), the Supreme Court decided 'that the California common law equitable indemnity doctrine should be modified to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis.' (*Id.,* at p. 591.) The court further held 'that under the governing statutory provisions a defendant is generally authorized to file a cross-complaint against a concurrent tortfeasor for partial indemnity on a comparative fault basis, even when such concurrent tortfeasor has not been named a defendant in the original complaint.' (*Id.,* at p. 607 (fn. omitted).) Finally, the court reconciled these substantive and procedural holdings with the 'strong public policy in favor of settlement' (*id.,* at p. 603) reflected and effectuated by section 877,[3] by declaring 'that a tortfeasor who has entered into a "good faith" settlement [citation] with the plaintiff must also be discharged from

---

"[3] Section 877 provides: 'Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—[¶] (a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and [¶] (b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors.'

any claim for partial or comparative indemnity that may be pressed by a concurrent tortfeasor.' (20 Cal.3d at p. 604; see also *id.,* at p. 607, fn.9 ...).

"Two years later *Fisher* v. *Superior Court* (1980) 103 Cal. App.3d 434 [163 Cal.Rptr. 47] observed that notwithstanding AMA's disqualification of a good faith settling tortfeasor from liability for comparative equitable indemnity, cross-complaints against such settling defendants were frequently being pressed. *(Id.,* at p. 440.) To short-circuit this burden upon settlors and to further effectuate the policy favoring settlement advanced by AMA, the *Fisher* court held that judicial determination of the 'good faith' vel non of a settlement—the issue determinative of the settlor's discharge from contribution under section 877 and from comparative indemnity under AMA—should be made 'at the earliest possible time,' and if at all possible 'in advance of the trial of the plaintiff's complaint or of any determination of comparative or partial (equitable) indemnity as between cross-complainant and cross-defendant tortfeasors.' (103 Cal.App.3d at pp. 442-443.) In addition, *Fisher* held the party asserting a settlement has not been entered into in good faith bears the burden of proof on that issue. *(Id.,* at pp. 447-449.)

"Responding to procedural and substantive concerns expressed and partially resolved in *Fisher,* the 1980 Legislature enacted section 877.6 *(Northrop Corp.* v. *Stinson Sales Corp.* (1984) 151 Cal.App.3d 653, 657, fn. 4 [199 Cal.Rptr. 16]; accord 4 Witkin, Summary of Cal. Law (1984 supp.) Torts, § 40A, p. 29.) The statute [§ 877.6, fn. omitted] provides a specific, speedy hearing mechanism for determination of 'the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors' (subd. (a)), the determination to be made upon proof by affidavit, or other evidence in the discretion of the court (subd. (b)). It also codifies the *Fisher* court's holding that '[t]he party asserting the lack of good faith shall have the burden of proof on that issue' (subd. (d)). ...." (*Shane* v. *Superior Court* (1984) 160 Cal.App.3d 1237, 1243-1245 [207 Cal.Rptr. 210].)

"In the past, there was a marked split of authority as to whether 'good faith' required a *proportionate sharing of liability* or simply that the settling tortfeasor refrain from 'tortious conduct' (i.e., a collusive settlement intended to injure the interests of the nonsettling defendants). [See, e.g., *River Garden Farms, Inc.* v. *Super.Ct.* (1972) 26 CA3d 986, 103 CR 498—some form of 'proportionality' required; *Dompeling* v. *Super.Ct.* (1981) 117 CA3d 798, 173 CR 38—disproportionately low settlement not in 'bad faith' so long as no 'collusion' or 'tortious conduct']

"The Cal. Supreme Court has put the heart of this controversy to rest but, in so doing, has vested trial courts with broad discretion[.]

"... According to the Supreme Court, a 'good faith' settlement for purposes of CCP §§ 877 and 877.6 must strike harmony between the competing public policies of encouraging settlements and the equitable sharing of costs among the parties at fault. As such, a precise definition of 'good faith' in this context is 'neither possible nor practicable.' Rather, the issue is to be judged by a 'reasonable-range'/'within-the-ballpark' test ... the underlying question being whether the settlement represents a good faith determination of *relative liabilities*. [*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 C3d 488, 494-497, 213 CR 256, 260-262]

". . . . . . . . . . . . . . . . . . . .

"... 'Reasonable range' does not limit a 'good faith' settlement to the settling defendant's 'theoretical proportionate or fair share'; and 'bad faith' is thus not established by a showing that the settling defendant paid *less* than his or her 'theoretical proportionate or fair share.' ...

"... Even so, *Tech-Bilt* does not make the amount of the settlement irrelevant. To give effect to the two public policies, several factors must be considered ... including:

"A 'rough approximation of plaintiff's total recovery and the settlor's proportionate liability';

"[The amount paid in settlement;]

"The 'allocation of settlement proceeds among plaintiffs';

"A 'recognition that a settlor should pay less in settlement than he would if he were found liable after a trial';

"[Settlor's financial condition;]

"[Insurance policy limits of settlor;]

"The 'existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.' [*Tech- Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 C3d at 499, 213 CR at 263]" (Cal. Practice Guide, Personal Injury (Rutter Group 1986) Bodily Injury Claim Settlements, §§ 4:193-4:194.2, pp. 4-64-4-66.)

In this case, the settlor's motion for good faith determination in effect noticed a hearing on the issue of good faith and sought to bar any claims for equitable contribution based upon comparative negligence. The attached

declaration only referred to the USAA family exclusion in general terms, the existence of the declaratory relief action, and that $60,000 was paid by USAA to settle all claims of plaintiff against settlor, after which the declaratory relief action was dismissed. This motion was made in the usual typical formbook manner. (2 Cal. Civil Procedure Before Trial (Cont.Ed.Bar 1978) § 28.18 & 1986 Supp. §§ 23.37-23.78; Cal. Practice Guide (1986) Personal Injury, form 4:3 at pp. 4-104-4-107.) In regard to the factorial approach of *Tech-Bilt,* the only factors stated were the amount of the settlement and the policy limits.

It must be noted that all subdivisions of 877.6 enunciate rules of procedure except for subdivision (c) which prescribes a substantive right of discharge from liability. Subdivision (a) in essence grants a hearing by settlor on the issue of good faith upon giving written notice in the manner provided in section 1010 which requires a statement of grounds upon which the motion will be based. Section 1005 further requires that the notice of motion be accompanied by supporting declarations. None of the procedural requirements of section 877.6 have been amended by the Legislature since the *Tech-Bilt* decision.

This court notes that of the hundreds of motions for good faith determination presented for trial court approval each year, the overwhelming majority are unopposed and granted summarily by the trial court. At the time of filing in many cases, the moving party does not know if a contest will develop. If each motion required a full recital by declaration or affidavit setting forth a complete factual response to all of the *Tech-Bilt* factors, literally thousands of attorney hours would be consumed and inch-thick motions would have to be read and considered by trial courts in an exercise which would waste valuable judicial and legal time and clients' resources. It must also be remembered that *Tech-Bilt* was decided on a contested basis. We are unaware of any reported decision which has reversed an *uncontested* good faith determination and we, therefore, conclude that only when the good faith nature of a settlement is disputed, it is incumbent upon the trial court to consider and weigh the *Tech-Bilt* factors. That is to say, when no one objects, the barebones motion which sets forth the ground of good faith, accompanied by a declaration which sets forth a brief background of the case is sufficient.

If the good faith settlement is contested, section 877.6, subdivision (d), sets forth a workable ground rule for the hearing by placing the burden of proving the lack of good faith on the contesting party. Once there is a showing made by the settlor of the settlement, the burden of proof on the issue of good faith shifts to the nonsettlor who asserts that the settlement was not made in good faith. (*Fisher* v. *Superior Court* (1980) 103 Cal.App.

3d 434, 447 [163 Cal.Rptr. 47]; § 877.6, subd. (d).) If contested, declarations by the nonsettlor should be filed which in many cases could require the moving party to file responsive counterdeclarations to negate the lack of good faith asserted by the nonsettling contesting party. We, therefore, conclude that the motion was sufficient in this case in that a prima facie showing of a good faith settlement was set forth by settlor.

## 2. The Good Faith Determination Hearing

■ Nonsettlors contend that there was sufficient evidence presented to prove that the accident was entirely settlor's fault and that settlor paid far less than his proportionate share of plaintiff's potential recovery and that the trial court failed to take this into account in making its order.

■ The ultimate determinant of good faith is whether the settlement is grossly disproportionate to what a reasonable person at the time of settlement would estimate the settlor's liability to be. (*Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499, 509 [203 Cal.Rptr. 825].) "[T]he damages are often speculative, and the probability of legal liability therefore is often uncertain. . . ." (*Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231, 238 [132 Cal.Rptr. 843].)

Settlor's percentage of liability is the touchstone question to be considered by the trial court in a contested good faith settlement hearing. ■ The evidence produced by nonsettlors set forth in the factual summary would support their claim that primary fault for the accident should be attributed to settlor. Settlor did not produce any conflicting evidence at the hearing which would tend to show any liability on the part of nonsettlors. The only conflict raised was the statement of settlor by way of deposition, produced by nonsettlors, that he had put City of Grand Terrace on notice of the dangerous condition of the roadway prior to the accident which apparently was resolved by the trial court in nonsettlors' favor.

We cannot assume from the record that the trial judge implicitly did not make a finding as to settlor's percentage of liability. He "reviewed materials" submitted by the parties and found that the $60,000 paid was "in the ballpark of the amount plaintiff might have collected from the defendant [settlor] after verdict." It is apparent to us that after finding that the percentage of settlor's liability was high and the percentage of nonsettlors' low and that the settlement range for plaintiff's total recovery was from $135,000 to $285,000, the trial court then found the family exclusion clause in the USAA policy to be valid and discounted settlor's settlement share to $60,000 on the assumption that there was no coverage.

■ "[P]ractical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement.... (*Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499, 509 ....)" (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d 488, 499.) ■ The trial court made the required evaluation of settlor's share of liability; however, there was insufficient evidence to support the finding as we will further discuss.

Nonsettlors assert that there was insufficient evidence presented as to settlor's financial condition and the availability of additional money from USAA, both of which could have been added to the pot, if available, to make up his proportionate share in settlement. As to this contention, we agree.

■ *Tech-Bilt* and its progeny make clear that the requirement of good faith in sections 877 and 877.6, which a settling defendant must satisfy to invoke the statutory bar against indemnity claims, was imposed primarily to protect the interests of nonsettling defendants. "[W]e accept as a general proposition that the Legislature intended the 'good faith' concept in section 877.6 to be a flexible principle *imposing on reviewing courts the obligation to guard against the numerous ways in which the interests of non-settling defendants may be unfairly prejudiced.*" (*Rankin* v. *Curtis* (1986) 183 Cal.App.3d 939, 945 [228 Cal.Rptr. 753] (italics added) citing, inter alia, *Tech-Bilt, supra,* 38 Cal.3d at p. 494, fn. 4; *Ex-Cell-O-Corp.* v. *Holdener* (1986) 181 Cal.App.3d 25, 32-33 [226 Cal.Rptr. 57].)

■ A necessary corollary to the definition of good faith in *Tech-Bilt* is that the trial court's consideration of the settlement agreement and its relationship to the entire litigation in a contested setting must proceed upon a sufficient evidentiary basis to enable the court to consider and evaluate the various aspects of the settlement. (See *Tech-Bilt, supra,* 38 Cal.3d at pp. 499-500; *Standard Pacific of San Diego* v. *A. A. Baxter Corp.* (1986) 176 Cal.App.3d 577, 583 [222 Cal.Rptr. 106].) Because *Tech-Bilt* mandates a rough approximation of the settling defendant's proportionate liability and consideration of all other defendants' proportionate liability and consideration of all other factors that might affect the fairness of the settlement as respects nonsettling defendants, the affidavits, declarations or other evidence should provide the court with the facts necessary to evaluate the settlement in terms of the factors contemplated by *Tech-Bilt.* Without the facts, in a contested hearing, it is impossible for a court to exercise its discretion in an appropriate fashion. (See *River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986, 998 [103 Cal.Rptr. 498]; see also *Northrop Corp.* v. *Stinson Sales Corp.* (1984) 151 Cal.App.3d 653, 657 [199 Cal.Rptr. 16].)

 The wealth or nonwealth of the settling defendant is a factor for the trial court to consider under *Tech-Bilt*. Nonsettlors produced evidence that settlor was an airline captain and nothing more. There was no evidence of his net worth or personal ability to respond in damages except for this statement from which the trial court could infer that settlor made a decent living. Assuming settlor was a person of wealth, at first blush, it would appear ridiculous to require him to contribute personal assets to plaintiff, his wife, in order to obtain good faith settlement approval. However, such could be required in order to protect the nonsettlors who, under section 877, subdivision (a), would be entitled to a set-off for amounts previously paid against any judgment ultimately rendered against them. Further evidence was necessary to resolve this issue.

The family exclusion clause and the entire USAA policy were not included in nonsettlors' evidence. The trial court assumed the family exclusion applied without any supporting evidence. If the policy exclusion applied and if settlor had no significant personal assets, settlor could be considered essentially judgment proof and the payment of $60,000 reasonable. Conversely, if the exclusion clause was not enforcible against settlor or a bar to nonsettlors' cross-complaint for indemnity, there would remain an additional $240,000 available from the policy to pay settlor's proportionate share in relation to his liability. For these reasons, we hold that it was an abuse of discretion for the trial court to find a good faith settlement in that there was insufficient evidence presented on the issues of settlor's financial condition and insurance coverage.

Settlor urges that because the party asserting lack of "good faith" has the burden of proof on that issue, the court was correct in making its good faith finding even if the record here lacks sufficient evidence to support the trial court's conclusion. We do not agree.

It is, of course, true the party asserting a settlement is not in "good faith" within the meaning of the statute has the burden of proof on that issue. (§ 877.6, subd. (d); *Tech-Bilt* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499.) However, the question of whether a settlement meets the statutory requirement of "good faith" presents an issue of fact. (*Barajas* v. *USA Petroleum Corp.* (1986) 184 Cal.App.3d 974, 987 [229 Cal.Rptr. 513]; *Widson* v. *International Harvester Co.* (1984) 153 Cal.App.3d 45, 58 [200 Cal.Rptr. 136]; *Wysong & Miles Co.* v. *Western Industrial Movers* (1983) 143 Cal.App.3d 278, 290 [191 Cal.Rptr. 671]; *River Garden Farms, Inc.* v. *Superior Court, supra,* 26 Cal.App.3d at p. 993.)

 The procedures to be followed by the parties in a contested good faith hearing have not been directly the subject of appellate review and

guidelines are necessary. At the time of the hearing, the objecting nonsettlor in many instances does not possess sufficient factual information to carry its burden of proof as to lack of good faith. As we have stated, the financial condition of the settlor is a relevant issue in this case as it is or will be in many other contested good faith settlement hearings. Facts in regard to financial condition are in the peculiar knowledge of settlor and have not until now been a proper subject of inquiry in the usual discovery process unless punitive damages are in issue. (*Coy* v. *Superior Court* (1962) 58 Cal.2d 210 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678].) Such inquiry is also subject to the imposition of a protective order in regard to the disclosure of a defendant's financial condition. (*Richards* v. *Superior Court* (1978) 86 Cal.App.3d 265, 272 [150 Cal.Rptr. 77].)

We have determined that it would be appropriate for the objecting nonsettlor to move for a continuance of the hearing, if necessary, for the purpose of gathering facts, which could include further formal discovery, to support its statutory burden of proof as to all *Tech-Bilt* factors nonsettlors placed in issue in order that the matter can be fully and fairly litigated. Such a procedure was suggested in the recent case of *Singer Co.* v. *Superior Court* (1986) 179 Cal.App.3d 875, 898 [225 Cal.Rptr. 159]. This rule shall apply to all contested good faith settlement hearings, no matter which of the *Tech-Bilt* factors are in issue. As we indicated earlier in this opinion, this could necessarily lead to motions for further discovery, additional declarations, and counterdeclarations by the parties and a delay in the proceedings, but this procedure will ensure that the expanded scope of the hearing dictated by *Tech-Bilt* will be followed, the evidence will be intelligently assessed, and the objectives of *Tech-Bilt* will be attained. A remand is appropriate in this case to allow for a good faith settlement hearing which conforms to this procedure.

3. Dismissal of Cross-complaints

In its order, the trial court dismissed all cross-complaints against settlor for equitable indemnity or for contribution. Nonsettlors contend that this portion of the order constituted error in that the cross-complaints sought total and partial indemnity alleged on alternative theories and contend further that the exclusionary clause in issue made no mention in regard to the exclusion of third party cross-complainants for indemnity.

█ As set forth earlier in this opinion, neither the policy nor the family exclusion provision were a part of the record and as a result thereof, there was an insufficient showing that the exclusion was or was not applicable. For this reason, it was an abuse of discretion for the trial court to find a good faith settlement. We now further find the order dismissing the cross-

complaints of nonsettlors must be vacated. Remand will require the trial court to consider the legal effect of the multigrounded cross-complaints of City of Grand Terrace and City of Colton, in relation to the USAA policy, *but only* if the dismissal of the cross-complaint has been put in issue by motion.

■ The motion by settlor in this case was only for a good faith settlement determination under section 877.6. Settlor did not move for a dismissal of the cross-complaints for indemnity upon a determination that the settlement was in good faith.

"[S]ection 877.6 does *not* provide or specify a procedure whereby the rule of discharge or 'bar' announced in *AMA* and codified by subdivision (c) may be implemented as between the tortfeasor whose settlement has been determined to be in good faith and cotortfeasors who assert indemnity claims against him. However, other provisions of the Code of Civil Procedure provide mechanisms by which the good faith settlor may obtain dismissal of actions or cross-complaints which come within the judicial and statutory bar. One popular and entirely appropriate method is to make a motion for summary judgment under section 437c, either contemporaneous with or following the hearing determining the good faith of the settlement. (See, e.g., *Northrop Corp.* v. *Stinson Sales Corp., supra,* 151 Cal.App.3d at pp. 657-658 and cases cited therein; *Wysong & Miles Co.* v. *Eastern Industrial Movers* (1983) 143 Cal.App.3d 278, 284 [191 Cal.Rptr. 671].) Another approach is a motion for judgment on the pleadings or, if the indemnity claim is not yet at issue, a general demurrer, in either case invoking judicial notice of the good faith settlement determination that effects a 'bar' to the claim, much as judicial notice may be taken of a prior judgment that operates as a bar to a pending action under the doctrines of res judicata and collateral estoppel. (See, e.g., *Weiner* v. *Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39 [170 Cal.Rptr. 533] [affirming general demurrer sustained on grounds of collateral estoppel established by judicial notice of prior proceedings].) Finally, some courts have granted simple motions to dismiss cross-complaints for indemnity immediately upon determining the cross-defendant's settlement was in good faith. (See, e.g., *Turcon Construction, Inc.* v. *Norton-Villers, Ltd., supra,* 139 Cal.App.3d at p. 282.) While we have found no authority expressly prescribing such a disposition, it shares with its traditional counterparts discussed above the features of a final adjudication made by *the court before which the indemnity claim or action is pending for determination.* [Original italics.]

"Regardless of which mechanism is chosen, employment of a distinct procedure to adjudicate the effect of a judicially determined good faith settlement upon a pending action or claim not only is procedurally neces-

sary but also serves an important salutary function: it focuses the court's attention distinctly upon two completely different substantive questions—whether the settlement was in good faith and whether the claim sought to be dismissed is of such a nature as to be barred by a good faith settlement. Each of these questions is becoming increasingly controversial and complex with the development of the law in this area. (Cf. *Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499 [203 Cal.Rptr. 825] and *City of Los Angeles* v. *Superior Court.* . . [L.A. 32000, hg. granted Nov. 21, 1984█ [meaning and method of measuring good faith of a settlement] with *Huizar* v. *Abex Corp.* (1984) 156 Cal. App.3d 534 [203 Cal.Rptr. 47] [types of indemnity claims barred under *AMA* and section 766.6, subd. (c)].) . . . [*Far West Financial Corp.* v. *D & S Company* (1987) 189 Cal.App.3d 1322 (234 Cal.Rptr. 771) review granted June 3, 1987 (S000606)].)" (*Shane* v. *Superior Court, supra,* 160 Cal.App.3d 1237, 1245-1246, information in italicized brackets added.)

"... A recent amendment to section 877.6 reiterates the limited procedural scope of the statute. Statutes 1984, chapter 311, section 1 adds a new subdivision (e), providing for review by writ of mandate of 'a determination of the good faith or lack of good faith of a settlement ....' The writ will lie 'to review th[at] determination,' [original italics] and the provisions of section 583 will be tolled 'during the period of review of a *determination* pursuant to this subdivision.' (*Ibid.* (italics added).) [Fn. omitted.] This reenactment and amendment of section 877.6 thus underscores that its existing subdivisions confer authority only to render a determination of good faith." (*Shane* v. *Superior Court, supra,* 160 Cal.App.3d 1237, 1246-1247.)

4. Due Process

In view of our dispositive holding, we are not required to resolve nonsettlors' remaining contention that they were deprived of a significant property right without due process of law in violation of the Fourteenth Amendment of the United States Constitution and article I, section 17, California Constitution. (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65 [195 P.2d 1].)

DISPOSITION

Let a peremptory writ of mandate issue to the San Bernardino Superior Court commanding it to vacate its order determining the settlement between the plaintiff and her husband, Henry J. Boyter, to be in good faith and its order dismissing the cross-complaints of nonsettling defendants

against the settlor and to allow the parties to submit further declarations and counterdeclaration and conduct further discovery, if necessary, as discussed herein to determine the good faith of settlor's settlement with plaintiff.

City of Grand Terrace and City of Colton shall recover from defendant Henry J. Boyter their costs (not including attorneys' fees) incurred in petitioning this court for relief. (*Oksner* v. *Superior Court* (1964) 229 Cal.App.2d 672 [40 Cal.Rptr. 621].)

The alternative writ is discharged.

Campbell, P. J., and McDaniel, J., concurred.

On July 22, 1987, the opinion was modified to read as printed above.